[Crim. No. 12971. In Bank. May 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GARY DALE FRANCIS, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—An information was filed charging Gary Dale

Francis with selling and giving away marijuana (Health & Saf. Code, § 11531.)[1] A jury trial was waived, and the case was submitted on the preliminary hearing transcript. The court found Francis guilty of possession of marijuana (Health & Saf. Code, § 11530), which the court determined to be "a lesser offense than that charged . . . but necessarily included therein." The court denied probation and sentenced him to imprisonment in the state prison for the term prescribed by law.

Francis appeals from the judgment contending, among other things, that the evidence is insufficient to support his conviction and that, if the conviction is sustained, the case should be remanded to the trial court with directions to reconsider the sentence in view of a recent amendment to section 11530, which permits the trial court in certain cases to impose a county jail term.[2] We have concluded that the conviction should be upheld but that because of the recent amendment to section 11530 the case should be remanded to the trial court to reconsider the matter of probation and sentence.

Officer Finnigan (who presumably was acting undercover) met Francis and Gerald Roberts at a trailer court. Francis indicated that he and Roberts were going that evening to purchase marijuana and agreed to take Finnigan with them. The three men and one Bill Jones drove in the officer's car to the home of Cleatus Anderson. There Finnigan was introduced to Cleatus and Gary Anderson. Francis told Gary Anderson that they were interested in purchasing marijuana, and, upon being asked how much they wanted, Francis replied "four cans." Gary Anderson stated he would have to go to Bell Gardens to pick it up, and he and a woman left. They returned a short while later, and Gary Anderson was carrying a sack from which he removed four "sandwich bag packages." He handed Francis, Finnigan, Jones and Roberts each one package. Francis gave money to Roberts, who handed it together with an additional sum to Gary Anderson. Finnigan paid Gary Anderson directly. It was stipulated that an

---

[1] This charge was in one of three counts charging violations of the same code section, and, in addition to Francis, Gerald Roberts, Cleatus Anderson, and Gary Anderson were named as defendants. Roberts and Cleatus Anderson were convicted of possession of marijuana; the record does not show whether Gary Anderson was convicted on any count. Francis alone has appealed.

[2] The latter contention is also presented in *People* v. *White, post* p. 80 [75 Cal.Rptr. 208, 450 P.2d 600], decided on the same day as the instant case.

examination revealed that the substance in the package handed to Finnigan was marijuana.

Francis contends that there is no evidence that he had possession of the marijuana sold to Officer Finnigan. Unlawful possession of narcotics is established by proof that the defendant had, among other things, physical or constructive possession of the contraband. (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359] ; *People* v. *Gorg,* 45 Cal.2d 776, 780 [291 P.2d 469].) There is no evidence that Francis had physical possession of the marijuana sold to Finnigan ; Gary Anderson obtained the marijuana and handed it directly to Finnigan.

The Attorney General asserts that Francis had constructive possession of the marijuana sold to Finnigan.[3] "The accused has constructive possession when he maintains control or a right to control the contraband." (*People* v. *Showers,* 68 Cal.2d 639, 643-644 [68 Cal.Rptr. 459, 440 P.2d 939].) "Possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to his dominion and control" (*People* v. *Showers, supra,* 68 Cal.2d at p. 644) or which is subject to the joint dominion and control of the accused and another (*People* v. *Jackson,* 191 Cal.App.2d 296, 302 [12 Cal.Rptr. 748] ; *People* v. *Poe,* 164 Cal.App.2d 514, 516 [330 P.2d 681] ; *People* v. *MacArthur,* 126 Cal.App.2d 232, 236 [271 P.2d 914]). The accused also has constructive possession of 'narcotics that are in the physical possession of his agent or of any other person when the defendant has an immediate right to exercise dominion and control over the narcotics. (*People* v. *White,* 50 Cal.2d 428, 431 [325 P.2d 985] ; *People* v. *Blunt,* 241 Cal.App. 2d 200, 204 [50 Cal.Rptr. 440] ; *People* v. *Gonzales,* 116 Cal. App.2d 843, 844 [254 P.2d 603] ; *People* v. *Sinclair,* 129 Cal. App. 320, 322 [19 P.2d 23].)

 The record is devoid of evidence that Francis had control or a right to control the marijuana sold to Finnigan. It does not appear that the marijuana was at a location subject to the dominion and control of Francis when Gary Anderson picked it up, nor does it appear that Gary Anderson was the agent of Francis or that Francis had a right to exercise dominion and control over the marijuana while it was Gary Anderson's physical possession.

Similarly, it does not appear that Francis had physical or

[3]The Attorney General states no theory and cites no authority to support that assertion.

72

constructive possession of the substances Gary Anderson sold to Jones and Roberts.

■ A conviction for possession of marijuana may be upheld where there is evidence that the defendant aided and abetted another in committing the crime of possession of narcotics. (*People* v. *Hood,* 150 Cal.App.2d 197, 201 [309 P.2d 856] ; *People* v. *Henderson,* 121 Cal.App.2d 816, 817-818 [264 P.2d 225] ; *People* v. *Bigelow,* 104 Cal.App.2d 380, 389 [231 P.2d 881].) Here, however, although there is evidence that Francis aided and abetted Gary Anderson in committing the crime of sale of marijuana,[4] no claim is made, and it does not appear, that there is any evidence that Francis aided and abetted Gary Anderson in committing the crime of possession of marijuana. ■ "To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must share the criminal intent with which the crime was committed. The mere presence of the accused at the scene of the crime does not alone establish that the accused was an abettor. . . . In order to hold the accused as an aider and abettor the test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People* v. *Villa,* 156 Cal.App.2d 128, 133-134 [318 P.2d 828].) ■ The record does not show that Francis aided or encouraged Gary Anderson in obtaining or retaining possession of marijuana. So far as appears, when Francis expressed interest in buying marijuana Gary Anderson may already have had possession of the marijuana he later sold; the record shows merely that Gary Anderson stated he would have to go to Bell Gardens to pick it up.

■ Francis further asserts that there is no evidence that the package *he* purchased contained marijuana. Although it does not appear that the package Francis received was seized and analyzed, the narcotic character of a substance may, of course, be proved by circumstantial evidence (*People* v. *Ihm,* 247 Cal.App.2d 388, 392 [55 Cal.Rptr. 599] ; *People* v. *Vassar,* 207 Cal.App.2d 318, 324 [24 Cal.Rptr. 481]), and here the recited evidence clearly constitutes substantial proof that the package Francis purchased contained marijuana.

It is necessary, however, to consider whether possession of

[4]This appears to have been the theory upon which the magistrate held Francis to answer. A motion to dismiss the count was made, and the magistrate denied it, stating that "the actual sale" was made only by Gary Anderson "but I think there is sufficient evidence that [Francis] aided and abetted."

that marijuana is an offense necessarily included in the crime charged, namely, selling and giving away marijuana. Penal Code section 1159 provides that the trier of fact "may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged. . . ." ██ "[W]here an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Thomas,* 58 Cal.2d 121, 128 [23 Cal.Rptr. 161, 373 P.2d 97]; *In re Hess,* 45 Cal.2d 171, 174 [288 P.2d 5]; *People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 582]; see Witkin, Cal. Criminal Procedure (1963) pp. 552-555.) ██ Thus before a lesser offense can be said to constitute a necessary part of the greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. (*People* v. *Thomas, supra.*) ██ To be necessarily included, the lesser offense must be "part of the greater in fact" as well as being "embraced within the legal definition of the greater as a part thereof." (*People* v. *Kerrick,* 144 Cal. 46, 47 [77 P. 711]; *People* v. *Lewis,* 186 Cal.App.2d 585, 596 [9 Cal.Rptr. 263]; *People* v. *McGrath,* 94 Cal.App. 520, 522 [271 P. 549].)[5]

██ The elements of the crime of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence of the drug and its narcotic character. (*People* v. *Groom, supra,* 60 Cal.2d 694, 696; *People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Gorg, supra,* 45 Cal.2d 776, 780.) ██ No sale of narcotics is possible without such actual or constructive possession (*People* v. *Rosales,* 226 Cal.App.2d 588, 592 [38 Cal. Rptr. 329]; *People* v. *Richardson,* 152 Cal.App.2d 310, 315-16 [313 P.2d 651]), and such knowledge (*People* v. *Tostado,* 217 Cal.App.2d 713, 719-720 [32 Cal.Rptr. 178]; cf. *Rideout v. Superior Court,* 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]). Accordingly, possession of narcotics is under some circumstances an offense necessarily included in the crime of sale of narcotics. (*People* v. *Rosales, supra.; People* v. *Evanno,* 265 Cal.App.2d 698, 700 [71 Cal.Rptr. 503]; *People* v. *Davis,* 263 Cal.App.2d 623, 626 [69 Cal.Rptr. 849]; cf. *People* v. *Cole,* 113 Cal.App.2d 253, 257 [248 P.2d 141].)

---

[5] A lesser offense may also be necessarily included if it is within the offense specifically charged in the accusatory pleading, as distinguished from the statutory definition of the crime. (*People* v. *Marshall,* 48 Cal.2d 4, 396 [309 P.2d 456].) In the instant case the accusatory pleading does not differ significantly from the statutory definition of the crime.

In *People* v. *Rosales, supra, People* v. *Evanson, supra,* and *People* v. *Davis, supra,* the recited evidence indicated that the defendants possessed narcotics and sold or gave those same narcotics to another. There the possession of narcotics was "part of the greater offense [sale of narcotics] in fact" and in law and was therefore a necessarily included offense in the charge of sale. Similarly in *People* v. *Cole, supra,* 113 Cal. App.2d 253, 257, where a count charging transportation of marijuana and a count charging possession of marijuana were both based on the same marijuana fragments the court stated that "any possession of this material must be held a mere incident to its transportation and . . . one offense was necessarily included in the other. . . ."

In the instant case, however, the possession by Francis of the marijuana he purchased from Gary Anderson was not "part of the greater offense [sale of marijuana] in fact" because it did not take place until after the only sales shown by the evidence and thus was not an incident thereto. (Cf. *People* v. *Sheldon,* 254 Cal.App.2d 174, 181-182 [61 Cal. Rptr. 778]; see also *People* v. *Holliday,* 120 Cal.App.2d 562, 564 [261 P.2d 301].) *People* v. *Davis, supra,* 263 Cal.App.2d 623, 626, is disapproved to the extent that it indicates that possession of narcotics other than the narcotics incident to the sale of narcotics charged is an offense necessarily included in that charge.

Although it appears that Francis was convicted of a crime not included in the charge against him, reversal is not required under the circumstances of this case. The preliminary hearing transcript contains evidence that would have supported a finding of guilt of the crime charged on the theory that Francis aided and abetted the sale to Finnigan (*People* v. *Moraga,* 244 Cal.App.2d 565, 568-569 [53 Cal.Rptr. 563]; *People* v. *McKinley,* 201 Cal.App.2d 256, 259 [19 Cal. Rptr. 898]), and of the crime of which he was convicted. As noted the case was submitted on the preliminary hearing transcript. No evidence was offered on Francis' behalf and no argument was made by the attorney appointed to represent him. In submitting the case neither Francis nor his attorney could rationally have anticipated anything other than a finding of guilt of some offense. When the trial court announced its finding the attorney's response was "Thank you, your Honor," indicative of his feeling that the judge had given Francis the benefit of being found guilty of a lesser offense. It is understandable that neither Francis nor his lawyer thereafter made any objection in the trial court to the court

finding. At the proceedings for the pronouncement of judgment the only remarks made on Francis' behalf were a plea for probation.

Under similar circumstances it was held in *People* v. *Powell*, 236 Cal.App.2d 884 [46 Cal.Rptr. 417], that conviction of a crime not included within the charges did not require a reversal of the judgment. The court stated in part (at p. 888), ". . . defendant, represented by competent counsel, stood by and acquiesced in a procedure whereby he was forever discharged on the serious counts included in the information as originally filed, and convicted of a less serious offense. Had defendant felt that he was in any way prejudiced by the action of the trial court, he could have prevented the error now relied on by a simple objection. . . . [D]efendant's failure to object must be regarded as an implied consent to treat the information as having been amended to include the offense on which the sentence was imposed, and thus to be a waiver of the only objection—lack of notice of the offense charged—which was available to defendant." (See also *People* v. *Hensel*, 233 Cal.App.2d 834, 838-840 [43 Cal.Rptr. 865] [cert.den. 382 U.S. 942 [15 L.Ed.2d 351, 86 S.Ct. 396]].)

At the time Francis was sentenced the penalty prescribed by section 11530 for a violation of that section where, as here, no prior narcotics offenses were alleged and found to be true was imprisonment in the state prison for one to ten years. (Stats. 1961, ch. 274, § 7.) The trial court could also grant probation to a defendant eligible therefor (Pen. Code, 1203) and could impose as a condition of probation a county jail term for a period not exceeding one year (Pen. Code, § 1203.1, 19a). While the instant case was pending on appeal, section 11530 was amended to provide for alternative sentences of imprisonment in the county jail for not more than one year or in the state prison for one to ten years where no prior narcotics offenses are shown. (Stats. 1968, ch. 1465, § 1.) Francis properly contends and we hold that this amendment applies to the instant case because the judgment had not become final before the effective date of the amendment and that the case should therefore be remanded to the trial court to consider the matter of probation and sentence.

*In re Estrada*, 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 2d 948], held that when a statute mitigating punishment comes effective after the commission of the prohibited act before final judgment the lesser punishment provided by new law should be imposed in the absence of an express

statement to the contrary by the Legislature. This rule has been repeatedly applied. (E.g., *In re Fink,* 67 Cal.2d 692, 693 [63 Cal.Rptr. 369, 433 P.2d 161]; *In re Ring,* 64 Cal.2d 450, 452 [50 Cal.Rptr. 530, 413 P.2d 130]; *In re Corcoran,* 64 Cal.2d 447, 449 [50 Cal.Rptr. 529, 413 P.2d 129].) *In re Estrada, supra,* at pages 744-745, after pointing out that the problem, of course, is one of trying to ascertain the legislative intent, reasoned "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply."

Here, unlike *Estrada,* the amendment does not revoke one penalty and provide for a lesser one but rather vests in the trial court discretion to impose either the same penalty as under the former law or a lesser penalty. Thus, asserts the Attorney General, there is no legislative determination that the "former penalty was too severe" and therefore no "inevitable inference" that the Legislature intended the amendment to apply to every case to which it could constitutionally apply. However, there is such an inference because the Legislature has determined that the former penalty provisions may have been too severe in some cases and that the sentencing judge should be given wider latitude in tailoring the sentence to fit the particular circumstances.

In arguing that the amendment to section 11530 should not be applied to cases where the sentencing occurred before the effective date of the amendment, the Attorney General points to the fact that the trial court could have suspended Francis sentence and placed him on probation with jail as a condition thereof, that a specific request for such an alternative was made, and that Francis thus was not deprived of the "proper sentence" as was the case in *Estrada.* However, although it appears that Francis was eligible for probation, this is not necessarily true as to all defendants sentenced for violating section 11530 whose cases were not final before the effective date of the amendment. Some defendants may have been ineligible for probation and the trial court before the amendment would have had no alternative but to sentence them to prison. Whether or not the Legislature intended the amendment to be retroactive to cases not final before the effective date of the amendment obviously cannot be decided on the basis of the

particular facts of this or any other individual case. Furthermore, the mere fact that the Legislature changed the offense from a felony to a felony-misdemeanor conceivably might cause a trial court to impose a county jail term or grant probation in a case where before the amendment the court denied probation to a defendant eligible therefor and sentenced the defendant to prison.

The Attorney General further argues that applying the amendment to cases on appeal will encourage frivolous appeals by defendants who hope for a change in legislation before their judgments become final. However, this same argument was advanced in the dissent in *Estrada, supra,* 63 Cal.2d 740, 753, and was impliedly rejected by the majority in that case. There is no basis for distinguishing the present case from *Estrada* in this respect.

The Attorney General next asserts that the effect of *Estrada* was merely to require the Adult Authority to redetermine the defendant's sentence and eligibility for parole under the statute as amended and that there was thus no disruption of the administration of justice, whereas here application of the amendment to cases not final before its effective date would require resentencing in a substantial number of cases with consequent disruption of the trial courts. However, it would not seem that the application of the amendment here in question to such cases would impose an insurmountable burden on trial courts. In this connection it should be noted that, although in *Estrada,* the trial court was not directed to hold further proceedings, the amendments there in question, as stated by this court in *In re Corcoran, supra,* 64 Cal.2d 447, 449, and *In re Ring, supra,* 64 Cal.2d 450, 452, not only reduced the penalty but also, among other things, eliminated [the] requirement that the sentence run consecutively with any prior incompleted sentence. *Corcoran* and *Ring* held that under *Estrada* the amendments were applicable to cases on appeal and that the petitioners therein must be returned to the trial courts for the purpose of determining whether the sentences should run consecutively or concurrently.

The Attorney General also argues that, since section 11530 [as] amended vests discretionary sentencing power in the trial court, "the very nature" of the amendment leads to the conclusion that it was only intended to apply to cases where sentencing occurred after the effective date of the amendment—that to hold that the amendment applied to cases on appeal would be to hold that the trial court erred in not

exercising discretion when it in fact had no discretion at the time it acted. However, the fact that the amendments in question in *Corcoran* and *Ring* vested discretion in the trial court was not there viewed as an indication that the amendments were to be prospective only.

The Attorney General next points to the fact that chapter 1465 of 1968 Statutes, which contains the section amending Health and Safety Code section 11530, also contains a section amending Health and Safety Code section 11910 (restricted dangerous drug possession) by vesting in the trial judge discretion to impose a state prison sentence in a case not involving any described prior convictions whereas in such a case before the amendment only a misdemeanor sentence could be imposed. The Attorney General states that a defendant who violated section 11910 before the effective date of the amendment could not be punished under the section as amended because to do so would be ex post facto (see *In re Estrada, supra,* 63 Cal.2d 740, 747), but could be punished under the law as it existed at the time of his act because of the saving clause in Government Code section 9608; that it is thus clear that the Legislature did not intend a retroactive application be given the section of chapter 1465 amending section 11910; and that the legislative intent applicable to the entire chapter is "presumptively the same." However, the Legislature manifestly could have different intents with respect to different sections contained in one chapter. Indeed the Attorney General's own position ascribes different intents to the Legislature with respect to different sections—namely that the legislative intent regarding section 11910 was that the law in effect at the time of a *violation* governs but that the legislative intent regarding section 11530 was that the law in effect at the time of *sentencing* governs.

Francis makes the following additional contentions, all of which lack merit:

He points to certain testimony as assertedly constituting inadmissible hearsay. However, the testimony was not offered to prove the truth of the matter asserted.

Francis asserts there was entrapment. However, "[e]ntrapment as a matter of law is not established where there is any substantial evidence . . . from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused." (*People v. Sweeney,* 55 Cal.2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049]) and here the recited facts constitute such evidence.

Francis finally makes the general assertions that "th

Judges did not advise him of his constitutional rights," that "he received ineffective representation," and that "his constitutional rights to equal protection and due process have been violated."" The record, however, does not support the contentions.

The judgment of conviction is reversed insofar as it commits Francis to imprisonment in the state prison and is otherwise affirmed. The case is remanded to the superior court for the sole purpose of resentencing Francis or placing him on probation, whichever action the superior court concludes is appropriate.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I concur and dissent.

I agree with the rationale of the opinion, and with the general relevance of *In re Estrada,* 63 Cal.2d 740 [48 Cal. Rptr. 172, 408 P.2d 948]. However, the disposition ordered by the majority is an exercise in futility that serves no useful purpose other than mere bookkeeping.

Section 11530 of the Health and Safety Code as amended, and properly found by the majority to be applicable to defendant, gives the trial judge the option of sentencing a defendant to state prison for one to ten years or to the county jail for not more than one year. On the date the defendant was sentenced, the trial judge had the option of sending him to state prison for one to ten years or placing him on probation with appropriate conditions, including up to a year in the county jail.

Given the alternatives of imposing a state prison sentence or probation with up to a year in the county jail, this trial judge rejected the lesser and pronounced the maximum sentence upon a defendant who he determined, in the exercise of judicial discretion, required the maximum in order to effect his rehabilitation. A fortiori the judge, had he been given the still lesser alternatives now permitted under the amended statute, would have rejected them.

Therefore the return of the defendant to court for resentencing at this late date is an idle act that merely disrupts prison routine and burdens a court calendar with an unnecessary and unproductive proceeding. It would appear to exalt form over substance. For that reason I dissent from the judgment.