[No. B070472. Second Dist., Div. Three. Apr. 6, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW LEE HOWARD et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*The opinion filed contains portions which need not be published. Pursuant to California Rules of Court, rule 976.1, it is ordered that Discussion, sections 3 and 4, be deleted from the published version of the opinion.

**COUNSEL**

Steven L. Dobbs and Lawrence C. Hersh, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sharon Wooden Richard and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KLEIN, P. J.—Defendants and appellants Andrew Lee Howard and James Joshua appeal the judgments entered following their convictions of conspiracy to purchase cocaine for sale and unlawful possession of moneys in excess of $100,000. (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, §§ 11351, 11370.6.)[1]

The trial court found both defendants had conspired to purchase in excess of 10 pounds of a substance containing cocaine within the meaning of former section 11370.4, subdivision (a)(2),[2] and that Howard personally had been armed in the commission of conspiracy to purchase cocaine for sale within the meaning of Penal Code section 12022, subdivision (c), and knew another principal personally was armed in the commission of unlawful possession of moneys in excess of $100,000 within the meaning of Penal Code section 12022, subdivision (d). The trial court sentenced Howard and Joshua to terms of 10 and 9 years, respectively, in state prison.

### SUMMARY STATEMENT

Howard and Joshua were convicted of conspiracy to purchase cocaine for sale in a reverse sting undercover operation. Joshua arranged to purchase 7 kilograms (15.4 pounds) of cocaine from undercover officers for $147,000. When Joshua arrived at the prearranged purchase point, he had no money or weapons. Howard arrived separately and brought with him $168,000 in cash. Both Howard and his female companion were armed. Joshua told the undercover officer he had quoted Howard a price of $168,000 and that the officer was to take $147,000 of the money and deliver the balance to Joshua. The undercover officers had only one kilogram of cocaine with them but could have obtained seven kilograms had it been needed.

The issues presented in the portion of the opinion authorized for publication are:

1. Did Howard and Joshua conspire to purchase cocaine for sale "with respect to a substance containing . . . cocaine" "[w]here the substance exceeds 10 pounds [in] weight"? (Former § 11370.4, subd. (a)(2).) We conclude they did.

2. Did Joshua possess Howard's money? We conclude he did not.

---

[1] All subsequent statutory references are to the Health and Safety Code, unless otherwise indicated.

[2] Section 11370.4, subdivision (a)(2), currently provides for a five-year enhancement for possession of more than four kilograms, as contrasted with ten pounds, of a substance containing cocaine. (Stats. 1992, ch. 680, § 1.)

In the unpublished portion of the opinion we find Howard and Joshua validly waived trial by jury and the presentence custody credit awarded Joshua must be corrected.

Thus, the judgment as to Howard is affirmed and the judgment as to Joshua is reversed in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The evidence established that on May 20, 1990, Deputy Sheriff Craig Anderson, working undercover, received a message via pager and, in response thereto, telephoned someone who identified himself as Josh (Joshua). Joshua asked whether Anderson was a cocaine dealer, if cocaine was available and the price per kilogram. Joshua told Anderson he wanted to purchase seven kilograms of cocaine at $21,000 each.

Later that day and three times the following morning, Anderson telephoned Joshua in response to pages. Anderson recorded these telephone conversations. The trial court listened to the tape recordings, and a transcript of the conversations was admitted into evidence.

After the last telephone call, Anderson drove to a parking lot in Hollywood with another undercover deputy. Anderson had a court order for seven kilograms of cocaine. However, due to a mix-up in the case number, he had only one kilogram with him in the trunk of a nearby vehicle. Anderson could have obtained an additional six kilograms of cocaine had he needed it.

Anderson was introduced to Joshua in a parking lot by Mark Schwartz, a paid police informant. Anderson told Joshua the deal was ready. Howard and codefendant Vera Smith then drove into the parking lot in a Mitsubishi.[3]

Joshua told Anderson "not to mention the prices to" Howard, that Howard "was bringing $168,000" in cash, and that Anderson should count out only $147,000. The conversation in the parking lot was recorded by means of a body wire worn by Anderson. There was a brown bag in the backseat of the Mitsubishi. The parties stipulated the bag contained $168,000 in United States currency. The events in the parking lot were videotaped.

Deputies found a loaded .357 magnum inside Smith's purse on the passenger side of the Mitsubishi and a loaded .38-caliber revolver next to the center console on the driver's side.

Anderson testified, in his expert opinion, the money was for the purchase of seven kilograms of cocaine and that Joshua, Howard and Smith were

---

[3]Smith is not a party to this appeal.

involved in a conspiracy to distribute cocaine. Also, the money did not belong to Howard but had been brought to the location on behalf of another and that it had been obtained by illegal means.

## CONTENTIONS

Howard and Joshua contend the evidence does not support the quantity enhancements, and they did not effectively waive trial by jury.

Joshua further contends the evidence does not support the conviction for unlawful possession of moneys in excess of $100,000, and the trial court incorrectly calculated presentence custody credit.

## DISCUSSION

1. *The trial court properly imposed quantity enhancements.*

Howard and Joshua contend the evidence does not support the quantity enhancements imposed by the trial court pursuant to former section 11370.4, subdivision (a)(2).[4] They argue the deputies had no cocaine at the place of the proposed sale and had only one kilogram nearby. Further, the People produced no evidence of the weight or chemical composition of any substance. They reason the absence of such evidence requires reversal of the true findings on the enhancements.

The People in turn contend the quantity enhancement may be proven based only on the conspirators' agreement to purchase more than 10 pounds of cocaine. They assert Howard and Joshua improperly rely on cases involving conspiracy to *possess* cocaine, whereas this case deals with conspiracy to *purchase* cocaine for sale. They claim the fact Howard and Joshua arrived in the parking lot with the agreed upon price for seven kilograms of cocaine is sufficient to prove the weight and type of substance involved.

The People also assert Anderson would have obtained an additional six kilograms of cocaine had it become necessary, and requiring Howard and Joshua to possess the cocaine increases "the already intolerable burden upon

---

[4]As it read at the time of this offense, section 11370.4 provided in part: "(a) Any person convicted of a violation of, *or of a conspiracy to violate*, Section 11351, 11351.5, or 11352 with respect to a substance containing . . . cocaine . . . shall receive an additional term as follows: [¶] . . . [¶] (2) Where the substance exceeds 10 pounds by weight, the person shall receive an additional term of five years. [¶] . . . [¶] The conspiracy enhancements provided for in this paragraph shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense." (Italics added.)

drug law enforcement personnel." Finally, the People argue the enhancement's purpose of increasing the punishment of those who traffic in large amounts of contraband is "totally unrelated to whether Deputy Anderson was willing and able to complete the sale."

a. *Legislative history and interpretive case law.*

The Legislative history of section 11370.4 indicates that when it became effective in 1986, it provided additional terms for persons convicted of violating sections 11351 or 11352 with respect to varying weights of cocaine or heroin. Then, as now, the length of the additional term increased with the quantity of contraband involved. Effective in 1987, subdivision (b), provided similar enhancements for persons convicted of listed drug offenses involving methamphetamine, amphetamine and phencyclidine.

Cases construing section 11370.4 conclude or imply imposition of the enhancement depends "upon a measurement of the amount of cocaine involved." (*People* v. *Price* (1989) 210 Cal.App.3d 1183, 1193 [259 Cal.Rptr. 282]; *People* v. *Pieters* (1991) 52 Cal.3d 894, 903 [276 Cal.Rptr. 918, 802 P.2d 420] [section 11370.4 enhancement properly imposed based upon the weight of a mixture containing the drug and not merely by the weight of the pure drug itself].)

In *People* v. *Lopez* (1993) 20 Cal.App.4th 897 [24 Cal.Rptr.2d 649], the court refused to apply the enhancement under section 11370.4, subdivision (b), to an individual convicted of conspiracy to sell methamphetamine. The evidence showed the defendant purchased 30 pounds of a precursor chemical from undercover officers for $20,000 and indicated he could provide 3 pounds a week of the finished product, methamphetamine, at a price of $7,000 per pound. *Lopez* held this evidence insufficient to support a three-pound quantity enhancement "when there is no existing substance [methamphetamine] but only a plan to obtain it." (20 Cal.App.4th at p. 902.)

*Lopez* reasoned section 11370.4's "use of the present tense of the word 'exceed,' [implies] a presently existing substance (methamphetamine, amphetamine or PCP) which can be weighed and which weighs more than three pounds. [Fn. omitted.]" (*People* v. *Lopez, supra,* 20 Cal.App.4th at p. 902.)

Effective in 1990, the Legislature amended section 11370.4 to make the quantity enhancements applicable not only to persons convicted of committing the enumerated drug offenses, but also those convicted of *conspiracy* to commit those offenses.

The express legislative purpose in enacting section 11370.4 was " 'to punish more severely those persons who are in the regular business of

trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics as opposed to individuals who have a less serious, occasional, or relatively minor role in this activity.' (Stats. 1985, ch. 1398, § 1, p. 4948.)" (*People* v. *Pieters, supra,* 52 Cal.3d at p. 898.)

■ The addition of conspiracy to commit the enumerated drug offenses to the list of crimes that trigger the enhancement indicates an intent to expand its application to situations previously not covered. Indeed, a conviction of conspiracy requires only proof the defendant and another person specifically intend to agree to commit a crime, specifically intend to commit the crime, and commit an overt act in furtherance of the agreement. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 789 [248 Cal.Rptr. 126, 755 P.2d 310]; *People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal.Rptr. 516, 524 P.2d 1300].) By including this offense with those giving rise to the enhancement, it reasonably can be inferred the Legislature intended to target those individuals who do not possess or have physical contact with the controlled substance. The legislative history of the 1989 amendment to section 11370.4 bears this out.

The history indicates conspiracy based convictions were added "to extend sentence enhancements to large narcotics traffickers who do not personally handle the narcotics but who are often prosecuted for conspiracy." (Rep. of Cal. Sen. Com. on Judiciary on Assem. Bill No. 2448, (1989-1990 Sess.) prepared for hearing date of Aug. 22, 1989.) The committee report noted: "[U]nder current law [weight] enhancements do not apply to conspiracies. Many leaders of large narcotics trafficking organizations do not personally handle the narcotics. As a result they are often convicted of conspiracy while their underlings are convicted of the substantive narcotics offense. This leads to the inequitable result that the leader of the organization receives a lesser sentence . . . than his underlings . . . ." (*Ibid.*)

b. *Rules of statutory construction applicable here.*

In construing section 11370.4 as amended to include conspiracy based convictions, we apply well-settled principles.

The objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134]; *Gooch* v. *Hendrix* (1993) 5 Cal.4th 266, 282 [19 Cal.Rptr.2d 712, 851 P.2d 1321]; *Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327].) In determining intent, we look first to the words of the statute themselves. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].)

Statutes should be construed in a reasonable and common sense manner consistent with their apparent purpose and the legislative intent underlying them. Practical interpretation which promotes a wise policy, rather than mischief or absurdity, obviously is preferred. (*People* v. *Carvajal* (1988) 202 Cal.App.3d 487, 501 [249 Cal.Rptr. 368].)

Generally, ambiguity in a criminal statute is resolved in favor of the defendant. (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].) However, this rule arises only where two reasonable interpretations of the same provision stand in relative equipoise. (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145-1146 [240 Cal.Rptr. 585, 742 P.2d 1306].) By necessity, construction is required only when a statute is unclear in some respect. Thus, a court should not be straitjacketed by the rule favoring lenity to the accused where the legislature has made its intent clear. "Such overbroad reliance upon one principle of statutory construction would constitute an abdication of our responsibility . . . ." (*People* v. *Jones* (1988) 46 Cal.3d 585, 599-600 [250 Cal.Rptr. 635, 758 P.2d 1165].)

With these principles in mind we turn to the section in issue here.

c. *Interpretation and application here.*

█ Former section 11370.4, subdivision (a)(2), never required "possession" of a controlled substance. It was the underlying offense which required the accused to possess for sale, to sell, to transport, etc., the controlled substance. Rather, former section 11370.4, subdivision (a)(2), applied where the accused committed an enumerated offense "with respect to a substance containing . . . cocaine" "where the substance exceed[ed] 10 pounds [in] weight."

Requiring persons convicted of conspiracy based offenses to possess the drug in order to impose an enhancement under section 11370.4, subdivision (a)(2), therefore, would add an element to the enhancement which the Legislature intended to eliminate. Redrafting the enhancement in this manner would prevent its application to defendants who clearly fall within its intended ambit.

In a common reverse sting operation where undercover officers are selling cocaine, it makes little sense to require the officers actually to transfer possession of the controlled substance to the purchasers in order to impose the section 11370.4 enhancement. Such a requirement unnecessarily exposes the officers to increased danger and adds little to the proof against the accused.

This does not mean proof of the quantity enhancement substance need not be substantial. In this regard, we are guided by the standard rules on sufficiency of the evidence in a criminal case. (*People* v. *Clair* (1992) 2 Cal.4th 629, 670 [7 Cal.Rptr.2d 564, 828 P.2d 705]; *People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Here, the evidence is uncontroverted.

Howard and Smith arrived at the scene of the transaction with $168,000 in cash based on their agreement to purchase seven kilograms of cocaine, which deal had been arranged by Joshua as a middleman. On these facts the Howard-Joshua conspiracy to purchase cocaine for the purpose of sale clearly was committed "with respect to a substance containing . . . cocaine" which exceeds 10 pounds in weight. (Former § 11370.4, subd. (a).)

Accordingly, the enhancements properly were applied.

   d.   *Any error in the trial court's failure to find on the record that Howard substantially was involved in the execution of the offense was harmless.*

During the course of the court trial, the trial court accepted as true defense counsel's assertion that the $168,000 brought to the place of sale did not belong to Howard. Based thereon, Howard claims the trial court implicitly found he had not been substantially involved in the planning, direction, execution, or financing of the offense as required by section 11370.4, subdivision (a), for conspiracy based convictions.

However, the evidence showed beyond any reasonable doubt that Howard's involvement in the execution of the conspiracy was substantial. He brought the $168,000 purchase price in cash to the scene, and both he and his companion were armed. Accordingly, the evidence overwhelmingly indicates Howard played a substantial role in the execution of the conspiracy.

Moreover, any failure to make an express finding of substantial involvement in the conspiracy (see *People* v. *Garcia* (1992) 3 Cal.App.4th 582, 584-586 [4 Cal.Rptr.2d 539]) was harmless beyond a reasonable doubt in light of the fact the trial court also convicted Howard of unlawful possession of moneys in excess of $100,000. The factual finding of substantial involvement assertedly omitted here, necessarily was resolved adversely to Howard

in the context of the unlawful possession of moneys charge. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 335 [185 Cal.Rptr. 436, 650 P.2d 311].) Conviction of this additional offense clearly demonstrates the substantial role Howard played in the execution of the conspiracy.

*2. The evidence does not support Joshua's conviction for unlawful possession of moneys in excess of $100,000.*

In count 2 of the information, Joshua was charged with unlawful possession of moneys in excess of $100,000, *not* conspiracy to possess. He contends his conviction on this count must be reversed because the evidence does not demonstrate he ever had actual or constructive possession of the contents of the brown bag.[5]

Joshua analogizes to drug possession statutes which require the accused to have the right to exercise dominion or control over the contraband or the place where it is found. (*People* v. *Rushing* (1989) 209 Cal.App.3d 618, 622 [257 Cal.Rptr. 286].) Here, the money arrived in Howard's car and remained there until it was seized. Joshua asked Anderson to count out and take the purchase price, $147,000, and to leave the balance. Joshua asserts he "was waiting for the transaction to take place so that he could get his share of the $168,000."

The People respond Joshua's liability is not based on his personal possession of the funds. Rather, he is guilty of the offense as an aider and abettor.

We conclude Joshua has the better argument.

Although the evidence shows Joshua was criminally involved in a conspiracy to purchase in excess of 10 pounds of cocaine and committed an act in substantial furtherance of the unlawful purchase, there is no evidence from which a rational trier of fact could conclude Joshua had actual or constructive possession of Howard's money.

---

[5]Section 11370.6, subdivision (a), provides: "Every person who possesses any moneys . . . in excess of one hundred thousand dollars ($100,000) which have been obtained as the result of the unlawful sale, possession for sale, . . . , offer for sale, . . . with knowledge that the moneys . . . have been so obtained, and any person who possesses any moneys . . . in excess of one hundred thousand dollars ($100,000) which are intended by that person for the unlawful purchase of any controlled substance . . . and who commits an act in substantial furtherance of the unlawful purchase, shall be punished by imprisonment . . . ."

An individual may be in actual or constructive possession of contraband.[6] Constructive possession does not require direct physical control over an item "but does require that a person knowingly exercise control or right to control a thing, either directly or through another person or persons." (CALJIC No. 12.01; *People* v. *Rogers* (1971) 5 Cal.3d 129, 134 [95 Cal.Rptr. 601, 486 P.2d 129]; *People* v. *Austin* (1994) 23 Cal.App.4th 1596, 1608-1609 [28 Cal.Rptr.2d 885].)

Applying this rule here, the trial court had to conclude Howard was Joshua's agent or that Joshua had the right to exercise control over Howard's money. Both propositions lack support in the record. Although Joshua conspired to traffic in cocaine, there is no evidence he ever possessed, or had the right to control, the money Howard brought to the deal. (See *People* v. *Tambini* (1969) 275 Cal.App.2d 757, 764-766 [80 Cal.Rptr. 179] [defendant who put buyer and seller together for a finder's fee never possessed marijuana].)

*People* v. *Francis* (1969) 71 Cal.2d 66, 72 [75 Cal.Rptr. 199, 450 P.2d 591], relied upon by the People, does not support their theory of liability. In *Francis*, much like the present case, the defendant set up a drug sale and brought four marijuana purchasers, including himself and an undercover officer, to the residence of the seller. The seller left, returned with four packages of marijuana and sold one to each of the purchasers. The defendant was charged with sale of marijuana. He waived jury trial and was convicted of simple possession as a lesser included offense.

*Francis* held the defendant did not possess the marijuana sold to the undercover officer or the other two purchasers and there was no evidence he aided and abetted the seller's possession of the marijuana. "A conviction for possession of marijuana may be upheld where there is evidence that the defendant aided and abetted another in committing the crime of possession of narcotics. [Citations.] Here, however, although there is evidence that Francis aided and abetted . . . [the] sale of marijuana, [fn. omitted] no claim is made, and it does not appear, that there is any evidence that Francis aided and abetted . . . the crime of possession of marijuana." (*People* v. *Francis*, *supra*, 71 Cal.2d at p. 72.)

Further, "the possession by Francis of the marijuana he purchased . . . was not [a lesser included offense] because it did not take place until after

---

[6]The People do not suggest "possession" for the purpose of this offense should have any meaning other than that given the term in possession of narcotics offenses. (See *People* v. *Newman* (1971) 5 Cal.3d 48, 52 [95 Cal.Rptr. 12, 484 P.2d 1356], disapproved on another point in *People* v. *Daniels* (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].)

the only sales shown by the evidence and thus was not an incident thereto. [Citations.]" (*People* v. *Francis*, *supra*, 71 Cal.2d at p. 74.)[7]

In this case, although Joshua aided and abetted a conspiracy to purchase cocaine for the purpose of sale, he never had actual or constructive possession of Howard's money, just as he never had actual or constructive possession of Deputy Anderson's cocaine. Nor did Joshua aid and abet Howard's possession of the money. Because Joshua could conspire to transport cocaine without possessing it (*People* v. *Rogers*, *supra*, 5 Cal.3d at p. 134, fn. 4), it follows he could conspire to purchase cocaine for the purpose of sale without possessing the purchase money.

Accordingly, Joshua's conviction of unlawful possession of moneys in excess of $100,000 must be reversed. Reversal on this count does not affect the term imposed as punishment was stayed pursuant to Penal Code section 654.

3.-4.*

. . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The evidence supports the trial court's imposition of quantity enhancements pursuant to section 11370.4, subdivision (a)(2), and Howard and Joshua validly waived trial by jury. However, Joshua's conviction of unlawful possession of monies in excess of $100,000 must be reversed, and the award of presentence custody credit in Joshua's abstract of judgment must be corrected.

DISPOSITION

As to Joshua, the conviction of unlawful possession of moneys in excess of $100,000 is reversed. Said reversal does not affect the unstayed term imposed.

The clerk of the trial court is directed to prepare and forward to the Department of Corrections a corrected abstract of judgment as to Joshua

---

[7]The Supreme Court nonetheless upheld the possession conviction on the theory the defendant personally possessed the marijuana he had purchased and had impliedly consented to conviction of that offense even though it was not a lesser included offense of sales because the evidence showed he had aided and abetted the sale to the undercover officer.

*See footnote, *ante*, page 1407.

reflecting 828 days of actual presentence custody credit and total presentence custody credit of 1242 days.

As to Howard, the judgment is affirmed.

Croskey, J., and Kitching, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 13, 1995.