Opinion
GRIGNON, J.
Defendant and appellant Carlos Chevalier appeals from a judgment following a jury trial in which he was convicted of certain drug offenses and weight allegations were found to be true. In the published portion of the opinion, we address his contention concerning the weight enhancement imposed on his drug conspiracy conviction. We conclude that *510 the verdict for a drug-conspiracy weight allegation pursuant to Health and Safety Code section 11370.4, subdivision (a)(6) need not expressly include the substantial involvement in the underlying offense element of the allegation. In the unpublished portion of the opinion, we address his contentions concerning Penal Code section 654 and presentence custody credit. We modify the abstract of judgment and affirm.
Procedural Background
Defendant was charged by information with conspiracy to possess for sale or transport cocaine in violation of Penal Code sections 182, subdivision (a)(1) and Health and Safety Code sections 11351 and 11352, subdivision (a). Defendant was also charged with possession for sale of cocaine in violation of Health and Safety Code section 11351. It was further alleged as to both counts that the cocaine weighed more than 80 kilograms within the meaning of Health and Safety Code section 11370.4, subdivision (a)(6). A jury convicted defendant as charged in the information and found the weight allegations to be true. The trial court sentenced defendant on the drug conspiracy conviction to 29 years in state prison and imposed a concurrent 29-year sentence on the possession for sale conviction. The trial court awarded defendant 801 days of presentence credit (537 actual custody, 264 conduct). Defendant appealed.
Facts
The prosecution evidence consisted of the testimony of one of defendant’s coconspirators, Omar Garcia, and corroborative evidence consisting of: observations by detectives while the conspirators were engaged in the plan to transport cocaine out of Southern California; fingerprint evidence; and inculpatory and demonstrably false statements of defendant. The conspiracy terminated on March 10, 1995, when detectives from the Orange County Narcotics Suppression Program arrested defendant and his confederates and served a search warrant on a residence.
Garcia had pled guilty to a charge of possession of cocaine for sale as a result of his participation in the instant conspiracy to transport and possess cocaine. Garcia had received a 12-year state prison term and, as part of his plea agreement, had promised to testify truthfully concerning the conspiracy involving defendant. Garcia testified as follows.
Garcia owned a condominium located in Burbank. He was having financial problems and had rented his condominium to Ramon Ramirez. Garcia became suspicious of Ramirez’s activities and ordered him to move out of *511 the condominium. Ramirez threatened Garcia. Garcia agreed to work for Ramirez. Ramirez introduced defendant to Garcia. In January 1995, Garcia and defendant picked up some packages in the City of Carson. Garcia asked defendant what was in the packages. Defendant said the packages contained cocaine.
At the beginning of February 1995, defendant was in New York with Ramirez. In late February 1995, defendant returned to Los Angeles to consummate a drug transaction. The transaction could not be consummated. Defendant left Los Angeles. On March 3, 1995, defendant returned to Los Angeles. Defendant was picked up by Garcia at the Los Angeles International Airport. On March 4,1995, defendant and Garcia left an empty van in Orange County. When Garcia and defendant later picked up the van, it contained boxes of cocaine. Garcia drove the van in which defendant was a passenger to the condominium in Burbank, where defendant was residing. Defendant slept in the master bedroom. Garcia, although he owned the condominium, slept in a small downstairs bedroom. The boxes of cocaine were unloaded by defendant. The boxes of cocaine were placed by defendant in a small office on the first floor of the residence. During the next several days, Garcia picked up other boxes of cocaine. They were also taken to the condominium. The boxes of cocaine were counted and repackaged in smaller boxes. Defendant did the repackaging. The packages of cocaine were to be shipped to New York.
On March 5, 1995, defendant and Garcia went to the Los Angeles International Airport to pick up a man named Paul. Paul was going to take the cocaine to New York. Garcia was told by defendant that Paul would take the cocaine to New York by truck. Paul was driven to a motel. The packages which were stored in Garcia’s residence were to be ready for delivery to Paul by Friday March 10, 1995.
Garcia’s testimony was corroborated by observations of Orange County narcotics investigators beginning March 5, 1995, and concluding with the execution of a search warrant on March 10, 1995. During that time period, Garcia and defendant were observed riding in automobiles in which counter-surveillance driving techniques were used in an effort to elude the authorities. Further, Garcia and defendant were observed to enter and exit the Burbank condominium. The detectives observed defendant and Garcia driving to various places in Southern California. These were the same places testified to by Garcia. On March 6, 1995, Garcia and defendant were observed by the detectives to be in the company of a man driving an 18-wheel truck trailer.
When the search warrant was served on March 10,1995,343 kilograms of cocaine were found in the Burbank condominium occupied by defendant. *512 The contraband had a value in the Los Angeles area at the time of the service of the search warrant of up to $17,000 per kilogram of cocaine. Further, some of the cocaine had been packaged with coffee grounds to disguise the scent. In the office where the cocaine was found, a coffee can was discovered. Defendant’s fingerprints were present on the coffee can found in the office with the cocaine.
Additionally, when the search warrant was served at the Burbank condominium, defendant made several incriminating statements. Defendant claimed he knew nothing of the boxes that were in the condominium. When he was advised that fingerprint evidence could be secured from the boxes, defendant admitted he may have moved some of them. Further, not knowing that he had been watched for several days by the Orange County detectives, defendant gave a false explanation as to his whereabouts during the time he was being observed driving about with Garcia, prior to the March 10, 1995, service of the search warrant.
Finally, Orange County detectives observed defendant and Garcia throw some flattened cardboard boxes into a dumpster at Garcia’s place of employment. There was cocaine residue on the boxes. Defendant’s fingerprints were present on the flattened boxes.
Discussion
I. Conspiracy Weight Enhancement
Defendant was charged with a weight enhancement as to both the conspiracy count and the possession for sale count, pursuant to Health and Safety Code section 11370.4, subdivision (a)(6). Health and Safety Code section 11370.4, subdivision (a)(6) provides in pertinent part: “Any person convicted of a violation of, or of a conspiracy to violate, Section 11351 . . . or 11352 with respect to a substance containing . . . cocaine . . . shall receive an additional term as follows: [U . . . [H . . . Where the substance exceeds 80 kilograms by weight, the person shall receive an additional term of 25 years. [*fl] The conspiracy enhancements provided for in this subdivision shall not be imposed unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense.”
The trial court instructed the jury as to the weight allegations in the language of CALJIC former No. 17.22.1[1] as follows: “It is alleged in Counts 1 and 2 that at the time of the commission of the crime of which the *513 defendant is accused he possessed for sale and/or transported a substance containing cocaine which exceeded 80 kilograms by weight, ['ll] If you find the defendant guilty of the crime charged in Counts 1 and 2, you must determine whether this allegation is true. [JD If you find defendant guilty of the crime of conspiracy to commit transportation of cocaine and possession for sale of cocaine involving a substance containing cocaine, which exceeds 80 kilograms, an essential element of this allegation is the defendant . . . was substantially involved in the planning, direction, execution, or financing of the conspiracy and its objective. [*][] The People have the burden of proving the truth of this allegation and each of its elements. If you have a reasonable doubt that it is true, you must find it to be not true. []D You will include a special finding on that question in your verdict using a form that will be supplied for that purpose.”[2]
The verdict form provided as follows: “We further find the allegation that the substance in the above-charged offense [conspiracy] exceeded 80 kilograms by weight within the meaning of Health and Safety Code [section] 11370.4[, subdivision (a) (6)] to be (insert ‘True’ or ‘Not True’).”[3] The jury inserted the word “true” in the space provided.
Defendant contends the jury was required to make a special finding that he was “substantially involved” in the planning, direction, execution, or financing of the underlying offenses. He argues that the failure to include “substantial involvement” language on the verdict form constitutes reversible error as to the weight allegation on the conspiracy conviction. In support of this contention, he cites People v. Garcia (1992) 3 Cal.App.4th 582 [4 Cal.Rptr.2d 539]. We do not find this contention to be persuasive.
Garcia considered a drug conspiracy case in which the jury had not been instructed as to the substantial involvement element, nor had the verdict form provided for such a finding. The appellate court concluded the jury instruction given was insufficient in that it did not encompass the substantial involvement statutory element. (3 Cal.App.4th at p. 586.) In passing, and without citation to authority, the Garcia court also stated, “Likewise, verdict forms pertaining to the enhancement should require a finding by the jury of defendant’s substantial involvement.” (Ibid.) We disagree with this dicta, as there is no basis for the conclusion that a jury must expressly find every element of a sentence enhancement allegation to be true. A proper jury instruction on the issue of substantial involvement, together with a jury finding that the weight allegation is true, is sufficient.
*514 “ ‘ “A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.” [Citations.]’ [Citations.] ‘The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]’ [Citation.] ‘[Technical defects in a verdict may be disregarded if the jury’s intent to convict of a specified offense within the charges is unmistakably clear, and the accused’s substantial rights suffered no prejudice. [Citations.]’ [Citation.]” (People v. Jones (1997) 58 Cal.App.4th 693, 710-711 [68 Cal.Rptr.2d 506].) A statutory requirement that the jury expressly find against a defendant on an issue is satisfied if the intention to convict of the crime is unmistakably expressed. (Id. at p. 711.) “The verdict is insufficient only ‘if it be susceptible of a different construction than that of guilty of the crime charged.’ ” (Ibid.) The same rules apply to a finding on a sentence enhancement allegation. (Ibid.) Thus, where a defendant is charged with intentionally inflicting great bodily injury on a victim in the course of an offense, and the jury is instructed that it is required to find that the defendant specifically intended to inflict great bodily injury, the wording in the verdict need not include express language that the injury was intentionally inflicted. (People v. Radil (1977) 76 Cal.App.3d 702, 709-710 [142 Cal.Rptr. 233].) It is sufficient if the wording in the verdict states only that the defendant did inflict such injury upon the victim. (Ibid.)
“[T]he jury’s function [is] to find whether the facts necessary for conviction [have] been proven, by assessment of the evidence admitted at trial in light of the court’s instructions defining the types and quanta of facts necessary for conviction. The verdict, culminating this process, [is] the jury’s statement whether it [has] or [has] not found those facts.” (People v. Cory (1984) 157 Cal.App.3d 1094, 1102 [204 Cal.Rptr. 117], original italics.) “[T]he function of the verdict is to register the jury’s determination of whether the evidence sufficiently establishes the facts that the instructions recite are necessary to conviction.” (Id. at p. 1103.) There is no need in this factfinding process for the enumeration in the verdict of all of the elements of the offense or enhancement. Where the jury is fully instructed as to each element of a sentence enhancement, it is not necessary that the verdict enumerate each of those elements.
In this case, defendant was charged with a weight enhancement in connection with the conspiracy charge pursuant to Health and Safety Code section 11370.4, subdivision (a)(6). That section provides that the conspiracy weight enhancements shall not be imposed “unless the trier of fact finds that the defendant conspirator was substantially involved in the planning, direction, execution, or financing of the underlying offense.” The jury was instructed that in order to find the conspiracy weight allegation to be true it *515 must find both that the cocaine involved in the conspiracy weighed more than 80 kilograms and that defendant was substantially involved in the planning, direction, execution, or financing of the conspiracy and its objective. The jury was further instructed: “The People have the burden of proving the truth of this allegation and each of its elements.” (Italics added.) Finally, the jury was instructed that it was to include a special finding “on that question” in its verdict.[4] The jury found the conspiracy weight allegation to be true. In light of the instructions, it is clear the jury intended to find that defendant was substantially involved in the underlying offenses. The jury made this finding with the verdict form it had been given.
Defendant argues that the statute requires an express finding in the verdict that the jury find the defendant was substantially involved in the underlying offenses. This is not so. The statute merely requires that the trier of fact find substantial involvement. It makes no mention of an express finding in a verdict. The statute provides that the weight enhancement shall not be imposed unless it “is charged in the accusatory pleading and admitted or found to be true by the trier of fact.” (Health & Saf. Code, § 11370.4, subd. (c).) This is the same language found in virtually every sentence enhancement statute. No special requirements are set forth in the weight enhancement statute.
Defendant contends further that even if an express finding is not required by the statute, the trial court instructed the jury that it would receive a verdict form containing such an express finding on substantial involvement in the underlying offenses. Defendant argues that the failure to provide such an express finding in the verdict form after informing the jury it would receive one may have led the jury to believe it need not find defendant was substantially involved in the underlying offenses. Defendant misconstrues the jury instruction.
The jury was not instructed it would receive a special finding on the substantial involvement element of the conspiracy weight allegation. It was instructed that substantial involvement in the underlying offenses was an element of the conspiracy weight allegation and the prosecution had the burden of proving the allegation and each of its elements. When the jury was instructed it would receive a special finding “on that question,” the instruction was referring to the weight allegation in general and not to the substantial involvement element in particular.
This interpretation of the instruction is mandated by the clear language of the instruction. In addition, the conclusion is buttressed by two interpretative *516 aides. First, prior to the addition of the substantial involvement element of the weight enhancement, the instruction contained identical language concerning “a special finding on that question.” (CALJIC No. 17.22.1 (5th ed. 1988) p. 461.) Second, most other sentence enhancement instructions contain identical language. (CALJIC Nos. 17.15, 17.16, 17.16.1, 17.17, 17.19, 17.19.1, 17.20, 17.22, 17.24, 17.24.1, 17.25 (1997 rev.), 17.26, and 17.28.2 (1997 rev.).)
We conclude the jury was properly instructed and properly found that defendant was substantially involved in the possession for sale and transportation of cocaine weighing more than 80 kilograms.
Even if the jury verdict should have contained a finding that defendant substantially participated in the underlying offenses, the purported error was harmless. The jury found defendant was guilty of possession for sale and the special allegation that defendant possessed more than 80 kilograms of cocaine within the meaning of Health and Safety Code section 11370.4, subdivision (a)(6) was true. In People v. Howard (1995) 33 Cal.App.4th 1407, 1411 [39 Cal.Rptr.2d 766], the defendant was convicted of conspiracy to possess cocaine for sale and unlawful possession of moneys in excess of $100,000 after a court trial. (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, §§ 11351, 11370.6.) As to the first count charging conspiracy to purchase cocaine, no express finding was made by the trial court that the defendant was substantially involved in the conspiracy within the meaning of Health and Safety Code section 11370.4, subdivision (a)(2). On appeal, the defendant in Howard argued that the trial court implicitly found he was not substantially involved in the planning, direction, execution, or financing of the underlying offenses as required by Health and Safety Code section 11370.4, subdivision (a)(6). The appellate court concluded the failure of the trier of fact to make an explicit finding was harmless, holding: “Moreover, any failure to make an express finding of substantial involvement in the conspiracy (see People v. Garcia (1992) 3 Cal.App.4th 582, 584-586 . . .) was harmless beyond a reasonable doubt in light of the fact the trial court also convicted Howard of unlawful possession of moneys in excess of $100,000. The factual finding of substantial involvement assertedly omitted here, necessarily was resolved adversely to Howard in the context of the unlawful possession of moneys charge. (People v. Wickersham (1982) 32 Cal.3d 307, 335. . . .) Conviction of this additional offense clearly demonstrates the substantial role Howard played in the execution of the conspiracy.” (People v. Howard, supra, 33 Cal.App.4th at pp. 1417-1418.)
The same is true in the present case. Defendant was convicted of possession of cocaine for sale and the special finding he possessed more than 80 *517 kilograms pursuant to Health and Safety Code section 11370.4, subdivision (a)(6) was found to be true. Moreover, the overwhelming and virtually uncontradicted evidence of guilt indicated defendant was an active participant in the underlying offenses as evidenced by: Garcia’s testimony; the observations of the Orange County detectives in the days leading up to the service of the search warrant; the discovery of the contraband in the condominium defendant was occupying; the presence of defendant’s fingerprints on boxes that had contained cocaine and on the coffee can; and defendant’s inculpatory and false statements to a detective. The purported error was harmless.
II., HI.*
Disposition
The abstract of judgment is modified to reflect 804 days of presentence credit, consisting of 536 days’ actual custody and 268 days’ conduct credit. As modified, the judgment is affirmed.
Turner, P. J., concurred.

 This instruction is now found in CALJIC No. 17.21.

 The Use Note states that the phrase “and each of its elements" is to be used when the defendant is accused of a conspiracy.

 Before the verdict forms were submitted to the jury, defense counsel reviewed the forms and expressed no objection when queried by the trial court.

 Defense counsel suggested, but did not pursue, that the language be modified to “those questions.” After other modifications to the instruction were agreed to, no further mention of defense counsel’s initial suggestion was made.

See footnote, ante, page 507,