Filed 5/13/15  P. v. Tubo CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>JON ERIC TUBO,<br><br>       Defendant and Appellant. | B251435<br><br>(Los Angeles County<br> Super. Ct. No. MA054335) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Eric P. Harmon, Judge.  Affirmed as modified.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

This case arises from a high-speed, single-car rollover accident in the desert near Lancaster. Defendant and appellant Jon Eric Tubo was driving the car, under the influence of alcohol and on a suspended license due to a prior drunk driving conviction. One of defendant's passengers was killed, and the other passenger sustained severe injuries, including a broken pelvis. Defendant was convicted by jury of one count of second degree murder, one count of driving under the influence (DUI) causing injury, one count of driving with a blood alcohol level in excess of 0.08 percent causing injury, one count of driving with a suspended license, and two counts of leaving the scene of an accident. He was sentenced to a term of 15 years to life for the murder count, plus an aggregate determinate term of seven years on the remaining counts.

Defendant makes the following arguments: (1) juror misconduct warrants the granting of a new trial; (2) review of his two motions brought pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) is necessary to determine if any discovery materials were withheld; (3) the one-year sentence enhancements pursuant to Vehicle Code section 23558 on counts 3 and 4 must be vacated, or alternatively stayed; (4) the conviction on count 7 must be vacated because leaving the scene of an accident supports only one conviction irrespective of the number of victims; and (5) his presentence custody credits should be modified to reflect 703 actual days.

We agree defendant's sentence must be modified in the following respects: the conviction on count 7 must be vacated and the count dismissed, and the presentence custody credits should reflect 703 actual days. Several transcription errors must also be corrected in the abstract of judgment as discussed below. We otherwise affirm defendant's conviction as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Ed Berlin, Jeremy Meier and defendant were all residents of the same mobile home park in Lancaster, California. In the early evening of October 14, 2011, defendant and Mr. Meier went over to Mr. Berlin's home to help him prepare to move. Mr. Berlin had a new car, a Firebird, and defendant asked to take it for a drive.

2

Mr. Berlin got into the front passenger seat and Mr. Meier got into the seat behind him. Both of them put on their seatbelts. Defendant got into the driver's seat. Almost immediately, defendant "gunned it" and within a short period of time reached 110 miles per hour. Mr. Berlin and Mr. Meier yelled at defendant to slow down. Near an intersection controlled by a stop sign, at which defendant did not slow down or stop, the car hit a bump in the road, went into a roll, and flipped over multiple times. The car came to rest upside down, some distance from the road.

Mr. Berlin was pinned in the front passenger seat and sustained fatal traumatic injuries. Mr. Meier was knocked unconscious. When he came to, he was able to unbuckle his seatbelt and drag himself out of the overturned vehicle. He was unable to stand. It was later determined Mr. Meier had a broken pelvis, and a fractured skull, among other serious injuries.

Defendant was injured but was able to walk away from the vehicle. He told Mr. Meier that Mr. Berlin was dead. Defendant told Mr. Meier he did not want to go to jail for murder, so they were going to say that Mr. Berlin was driving. Mr. Meier pleaded with defendant to drag him to the road to try to get help. Defendant dragged Mr. Meier a short distance and then abandoned him. Mr. Meier dragged himself the remaining distance and was eventually able to flag down a passing motorist. The motorist called 911 and paramedics arrived on the scene.

Officer Timothy Shields of the California Highway Patrol also responded. It was determined there had been a third occupant in the car. The perimeter of the accident site was searched, including by helicopter. Based on information learned from Mr. Meier, Officer Shields directed Officer Carl Savage to check defendant's residence at the mobile home park. Officer Savage found defendant at his home, along with several family members and fire department personnel attempting to render medical aid to defendant. Defendant was combative and belligerent and Officer Savage smelled alcohol on defendant's breath.

3

Defendant was transported to the hospital. He tested positive for alcohol and amphetamines. In two different screening tests, defendant's blood alcohol level was measured at 0.125 percent and 0.128 percent, respectively.

Defendant was arrested and charged with seven counts.[1] Count 1, second degree murder (Pen. Code, § 187); count 3, DUI causing injury (Veh. Code, § 23153, subd. (a)); count 4, driving with a blood alcohol level over 0.08 percent causing injury (Veh. Code, § 23153, subd. (b)); count 5, driving with a suspended license with a prior DUI conviction (Veh. Code, § 14601.2, subd. (a)); and counts 6 and 7, leaving the scene of an accident (Veh. Code, § 20001, subd. (a)). It was also specially alleged as to counts 3 and 4 that defendant personally inflicted great bodily injury in the commission of the offenses within the meaning of Penal Code section 12022.7, subdivision (a) and within the meaning of Vehicle Code section 23558. It was further alleged as to counts 1, 3 and 4 that defendant had suffered a prior DUI conviction (Veh. Code, § 23152).

Defendant pled not guilty and denied the special allegations. Defendant brought a *Pitchess* motion for disclosure of personnel records pertaining to Officers Shields, Savage, and Joshua Wupperfield. As to Officers Shields and Savage, the court granted the motion in part, ordering an in camera hearing of all relevant personnel records relating to any complaints for dishonesty against the two officers. As to Officer Wupperfield, the court denied the motion without prejudice to defendant renewing the motion in the event it was determined he would be called as a witness.

The in camera hearing on March 12, 2012, was transcribed by a court reporter and the record sealed. At the hearing, the custodian of records was placed under oath and attested that, as to Officer Savage, there were no complaints of any kind. As to Officer Shields, the custodian attested to only one complaint for verbal discourtesy that was not sustained. The court concluded there were no discoverable materials.

---

[1] Count 2 (gross vehicular manslaughter for the death of Mr. Berlin) was dismissed on the prosecution's motion before the start of trial.

Defendant renewed his motion as to Officer Wupperfield after the prosecution gave notice he would be called as a witness. The court granted the motion in part, ordering, as with the previous motion, that only records pertaining to any complaints for dishonesty would be reviewed in camera. The in camera hearing held May 13, 2013, reflects the custodian of records was duly sworn and the proceeding was transcribed by a court reporter and the record sealed. The custodian attested to the existence of three complaints against Officer Wupperfield. The court reviewed the complaints, identifying them on the record by control number, as well as a factual summary. The court found two to be irrelevant complaints concerning the officer's alleged discourtesy in the course of two separate traffic stops. The third complaint the court found to be discoverable and ordered discovery to be provided to the defense.

The case proceeded to trial by jury. It was stipulated defendant had a blood alcohol level of 0.12 percent at the time of the accident. Also pursuant to stipulation, the transcript of defendant's entry of a plea of no contest to a prior DUI on September 2, 2011, just a month before the roll-over accident, was read into the record. The transcript included the court's admonishment to defendant that driving under the influence of alcohol is extremely dangerous to human life, and that if defendant continued to drive while drunk and someone was killed, defendant could be charged with murder.

On the first day of deliberations, Juror No. 7 asked if he could stay late for a few minutes to read some of the jury instructions. The court responded: "I can't let you stay any later than 4:30, and if it's only you, I cannot permit you to stay by yourself and have access to the jury instructions. So tomorrow, when you come in, you can do that, but only when all of the other jurors are present as one. [¶] Does that make sense, sir?" Juror No. 7 said yes.

The next morning, the court advised counsel the jury had sent out two questions, one of which asked for "a more thorough definition of the term malice of forethought [*sic*], to clarify that the legal term is different from the 'everyday, ordinary meaning.' " (The second question is not pertinent to our discussion.) The court also told counsel that five additional typewritten questions had been submitted by Juror No. 7 on a sheet of

standard white paper (not the court form), which was not signed by the jury foreperson. Rather, "Juror #7 (seven)" was handwritten in the upper right-hand corner.

The five additional questions from Juror No. 7 were: "Question 1 [¶] Testimony was given that indicated the defendant's blood alcohol content was greater than 0.08. Was testimony also given that clearly stated that the accident was caused by alcohol consumption by the defendant? If so, please specify the exact testimony that clearly states the accident was so caused. [¶] Question 2 [¶] Malice is defined by Random House Webster's College Dictionary as: (1) 'a desire to inflict harm or suffering on another, or (2) Harmful intent on the part of a person who commits an unlawful act injurious to another. [¶] Is there any reason why this definition is not appropriate or is inaccurate [*sic*] for Charge 1? If the court believe [*sic*] it is not appropriate, what is the precise definition that the jury should be using. [¶] Question 3 [¶] Also, is the definition of malice changed in any manner, by specifying that it is either express malice or implied malice? If so, please explain the new definition. [¶] Question 4 [¶] Please specify the exact testimony that clearly indicates that the defendant exhibited express or implied malice in accordance with Webster's quoted definition, or the courts [*sic*] definition, as applicable. (Re Q2 and Q3) [¶] Question 5 [¶] It seems, from Webster's definition, that malice only occurred if the defendant meant to create the accident that resulted in the death of Mr. Berlin and the injury to himself and Mr. Myers [*sic*]. Was there any evidence presented that clearly indicated the defendant intentionally meant to cause the accident which resulted in death and injury? If yes, please specify the exact testimony/evi [*sic*]." (Italics and boldface omitted.)

The court discussed all of the questions with counsel, and the prosecution expressed concerns about Juror No. 7's misconduct in bringing in outside material from a dictionary, after having been admonished by the court on the conclusion of the previous court day that he could not review the jury instructions on his own. The court noted the jurors were being asked to consider a count for murder based on implied malice which can be a difficult concept for jurors to grasp, and also explained that Juror No. 7 appeared

6

to be "extraordinarily conscientious" and not necessarily unwilling to listen to the court's directions. The court and counsel agreed upon a response to give the jury.

The court first explained that all questions must be submitted on the proper court form and signed by the foreperson. The court re-instructed with CALCRIM No. 520 setting forth the legal definition for express and implied malice as it applied to count 1.

The court then admonished the jury that it was "extraordinarily important" that it "adhere to the following: [¶] Do not use the internet or a dictionary or any other relevant source of information or means of communication in any way in connection with this case, either on your own or as a group. Do not investigate the facts or the law or do any research regarding this case, either on your own or as a group. [¶] Do not conduct any tests or experiments or visit the scene of any event involved in the case. If you haven't passed by the scene, do not stop or investigate. The critical part here is do not use the internet or dictionary or any other means of research. Don't investigate the facts or the law or do anything, even looking up a term in the dictionary. [¶] So as it relates to the questions on malice and their definition and its definition in Random House Webster's College dictionary, disregard that. Do not consider that. That's not the definition that you're dealing with on this case. [¶] The definition that you're dealing with on this case is explicitly spelled out in [CALCRIM No.] 520. Do not consider that definition that's been supplied by Juror No. 7. [¶] Juror No. 7, please refrain from doing any research whatsoever outside the jury room. Do not use the internet in any way, either in the jury room or outside of it. Everyone should arrive at an understanding of these terms together in the jury room and only when all the other jurors are present, without the assistance of any research, internet or dictionary. If that's not being adhered to, please notify the Court in writing."

The court also re-instructed the jurors that it was their job to determine what the facts established, and it was not the court's role to highlight certain testimony or evidence as either proving or disproving any issue on which they were deliberating.

After the jury returned to the jury room, the defense moved for a mistrial which was denied. The defense then requested that each juror be polled about his or her

7

exposure to the dictionary definition of malice brought in by Juror No. 7. The court agreed to do so. Each juror was brought in individually and asked if they had seen the dictionary definition and if so, whether they could disregard it and consider only the court's instructions in deliberating and reaching a verdict. Each juror confirmed having seen the definition. Each juror, including Juror No. 7, also confirmed the dictionary definition would be disregarded in favor of the court's instructions.

Outside the presence of the jury, the defense renewed its motion for mistrial, arguing that each of the jurors said they had seen the dictionary definition and were therefore prejudiced. The court denied the renewed motion, finding no prejudice. The court emphasized that all jurors agreed they could disregard the dictionary definition. "No one even equivocated. They can follow the definition of malice that's given in [CALCRIM No.] 520."

The prosecution then argued that separate from the issue of prejudice from the outside material was the issue of Juror No. 7 doing work and research on his own, without adhering to the court's multiple admonishments to deliberate only with his fellow jurors. The prosecution requested that Juror No. 7 be discharged as a juror and replaced by an alternate.

Defense counsel replied, "the defense would object to dismissing simply Juror No. 7. He hasn't given indication that he's not going to follow the Court's orders. He, in fact, answered in the affirmative as to whether he can disregard the dictionary definition that he read so we'd oppose any substitution."

The court denied the prosecution's request, finding it had not been shown Juror No. 7 was unwilling or unable to discharge his duties as a juror.

After further deliberations, the jury returned its verdicts, finding defendant guilty on all six counts: second degree murder of Mr. Berlin (count 1), DUI with a DUI prior causing injury to Mr. Meier (count 3), driving with a blood alcohol level above 0.08 with a DUI prior causing injury to Mr. Meier (count 4), driving with a suspended license (count 5), and leaving the scene of an accident (counts 6 & 7). The jury was polled and all 12 jurors affirmed the verdicts as reflected on the verdict forms.

8

Defendant moved for a new trial, on the basis of the claimed jury misconduct. The motion was denied.

The court sentenced defendant as follows: 15 years to life on count 1 (second degree murder); a consecutive midterm of two years on count 3 (DUI causing injury), plus three years for the great bodily injury enhancement (Pen. Code, § 12022.7, subd. (a)), and one year for the multiple victim bodily injury enhancement (Veh. Code, § 23558); an identical six-year term on count 4 (driving with a blood alcohol level above 0.08 causing injury), stayed pursuant to Penal Code section 654; a concurrent one-year term on count 5 (misdemeanor driving on a suspended license); a consecutive one-year term, one-third the midterm, on count 6 (leaving the scene of an accident); and, an identical one-year term on count 7 (leaving the scene of an accident), stayed pursuant to Penal Code section 654. The court imposed various fines and fees, and awarded defendant 702 days of presentence custody credits, inclusive of 105 days conduct credits.

The abstract of judgment correctly recites the 15-to-life term on count 1, but is inconsistent with the court's oral pronouncement of sentence on the record as to the determinate terms on the remaining counts. It recites only an aggregate six-year determinate term (instead of seven), omitting the one-year enhancement on count 3 pursuant to Vehicle Code section 23558. The abstract also incorrectly identifies counts 6 and 7 as convictions for driving on a suspended license instead of for leaving the scene of an accident.

This appeal followed.

## DISCUSSION

### 1.      Jury Misconduct

Defendant moved for a mistrial based on jury misconduct, arguing the entire panel acknowledged receiving the dictionary definition brought in by Juror No. 7 and were therefore prejudiced by extraneous material. A trial court's ruling on a motion for

mistrial is reviewed under the "deferential abuse of discretion standard." (*People v. Wallace* (2008) 44 Cal.4th 1032, 1068.)[2]

The jurors were exposed to Juror No. 7's research into the dictionary definition of malice. "Jurors are not allowed to obtain information from outside sources either as to factual matters or for guidance on the law." (*People v. Karis* (1988) 46 Cal.3d 612, 642 (*Karis*).) Juror No. 7's outside research and discussion with the jury of a dictionary definition of malice was misconduct. (*Ibid*.; accord, *People v. Barton* (1995) 37 Cal.App.4th 709, 715 (*Barton*) [jury "committed misconduct" by consulting a dictionary as to various legal terms].)

Misconduct by a juror raises a presumption of prejudice. (*Karis*, *supra*, 46 Cal.3d at p. 642.) However, " '[t]he presumption of prejudice "may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm to the complaining party. . . ." [Citation.] *Whether a defendant has been prejudiced by a juror's outside communications depends upon "whether the jury's impartiality has been adversely affected, and whether the prosecution's burden of proof has been lightened and whether any asserted defense has been contradicted.*" [Citations.]' [Citation.]" (*Ibid*., italics added; accord, *In re Carpenter* (1995) 9 Cal.4th 634, 653.)

Juror No. 7's conduct was immediately brought to the attention of the court at the start of the jury's deliberations. The court thoroughly re-instructed the jury with the correct legal definition of malice (CALCRIM No. 520), and also admonished the jury about its duty to deliberate together, to not perform any kind of outside research whatsoever, and to disregard altogether the dictionary definition of malice. The court

---

**2**     Defendant also argues the court erred in refusing to discharge Juror No. 7. However, defendant opposed the prosecution's request to discharge only Juror No. 7, and therefore cannot be heard to complain about that aspect of the court's ruling. In any event, the record reveals no abuse of discretion by the court.

questioned each juror individually and each juror, including Juror No. 7, agreed, without equivocation, to disregard the dictionary definition and adhere to the court's instructions only.

The prosecution's burden was not lightened by the extraneous information. Indeed, the dictionary definition was limited to the concept of express malice, and did not embrace the legal concept of implied malice on which the prosecution was resting its case against defendant for second degree murder. Had any juror taken the dictionary definition into consideration, it would have increased the prosecution's burden, not reduced it.

Moreover, defendant's defense to all charges, including count 1, was that he was not driving at the time of the accident. He did not present any defense based on the theory he did not form the requisite degree of malice. The extraneous information therefore did not have a substantial likelihood of prejudicing the defense. And, the evidence against defendant was strong. The fact he was intoxicated at the time of the accident was undisputed, evidence was presented defendant had previously sustained a DUI conviction and had been admonished in open court that if he drove drunk again and killed anyone, he could be charged with murder. Mr. Berlin was found deceased, still pinned under his seatbelt in the front passenger seat and therefore plainly could not have been the driver. The other victim, Mr. Meier, testified he was in the backseat and defendant was driving. Medical evidence regarding the nature of his injuries was presented that corroborated his testimony. The record contained substantial, if not overwhelming, evidence of defendant's guilt of second degree murder.

A verdict will not be set aside unless the likelihood of bias was substantial. (*In re Carpenter*, *supra*, 9 Cal.4th at pp. 654-655.) Given the thorough and timely admonitions and additional instructions by the trial court, as well as the jurors' unequivocal and unanimous agreement they could disregard the dictionary definition and the substantial evidence against defendant, we conclude there is no showing of any likelihood of bias against defendant, let alone a *substantial* likelihood. The presumption of prejudice raised by Juror No. 7's conduct was rebutted, and the trial court did not abuse its discretion in

11

denying defendant's motion for mistrial. (*Karis*, *supra*, 46 Cal.3d at p. 642; *Barton*, *supra*, 37 Cal.App.4th at pp. 714-715 [presumption of prejudice rebutted where use of dictionary definitions for several relevant terms was promptly brought to the attention of the court, the court immediately admonished jury to disregard any outside definitions, and each juror confirmed the dictionary definitions would be disregarded in reaching a verdict].)

## 2.      The *Pitchess* Motions

Defendant asks this court to review the *Pitchess* proceedings to determine whether or not discoverable material was withheld. Respondent does not object.

The trial court concluded defendant showed good cause to discover any complaints against Officers Shields, Savage and Wupperfield for acts of dishonesty. At both of the in camera hearings, the custodian of records was duly placed under oath and the proceedings were transcribed by a court reporter. The court adequately identified on the record the materials produced by the custodian, and ordered the production of records relating to one complaint made against Officer Wupperfield. We have reviewed the sealed transcripts of both proceedings and are satisfied the court did not abuse its discretion in ruling on defendant's motions. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230.)

## 3.      The Sentence Enhancements on Counts 3 and 4

Defendant raises two alternative arguments regarding the sentence enhancements on counts 3 and 4. Defendant first argues the one-year multiple victim enhancement set forth in Vehicle Code section 23558 (hereafter "one-year enhancement") must be vacated on the grounds the jury was never instructed on the enhancement, he did not admit the factual basis for the enhancement, and the jury did not make factual findings in the verdict forms for counts 3 and 4 regarding the enhancement. Defendant contends the one-year enhancements are therefore unlawful and cannot stand as a matter of law. In the alternative, defendant contends the one-year enhancements must be stayed in light of Penal Code section 654 because the court imposed the three-year great bodily injury enhancement pursuant to Penal Code section 12022.7, subdivision (a) (hereafter "three-

12

year enhancement") for the same injury to Mr. Meier on both counts.  Respondent argues both enhancements were properly imposed, but that the one-year enhancements should be stayed.  Both parties rely primarily on *People v. Arndt* (1999) 76 Cal.App.4th 387 (*Arndt*) for the argument the one-year enhancements must be stayed.

We conclude both the three-year enhancement and the one-year enhancement were properly imposed on count 3, and that the one-year enhancement need not be stayed.  We further conclude the trial court properly stayed sentence as to count 4 on the substantive offense and both enhancements pursuant to Penal Code section 654.

### a.        The record supports imposition of the one-year enhancements.

The one-year enhancement may be imposed where a defendant is guilty of felony drunk driving that causes bodily injury or death to more than one victim.  The one-year enhancement "shall not be imposed unless the fact of the bodily injury to each additional victim is charged in the accusatory pleading and admitted or found to be true by the trier of fact."  (Veh. Code, § 23558.)  Defendant does not dispute there were two victims who suffered injury as a result of his act of drunk driving in violation of section 23153.  Rather, defendant argues the one-year enhancements must be reversed and vacated because they were not submitted to the jury, and he did not admit, nor did the jury make, the necessary factual findings to support imposition of the enhancement.

The one-year enhancement for multiple victims was properly pled in counts 3 and 4 of the information.  The three-year enhancement for great bodily injury was also pled in counts 3 and 4 of the information.  Therefore, defendant had notice of the prosecution's intent to seek imposition of both the one-year enhancement and the three-year enhancement as to those two counts.

The jury instructions for counts 3 and 4 included CALCRIM No. 3160 as to the meaning of "great bodily injury."  The instruction reflects the definition set forth in Penal Code section 12022.7, subdivision (f) that "great bodily injury" means "significant or substantial physical injury."  The instruction further provides that great bodily injury means an injury "greater than minor or moderate harm."  The jury was *not* separately

13

instructed with an instruction regarding the one-year enhancement for more than one victim of defendant's drunk driving.

In the verdict forms, the jury found defendant guilty on both counts 3 and 4, namely driving while intoxicated and causing injury to both Mr. Berlin and Mr. Meier. The verdict forms then set forth the enhancement allegation, found to be true on both counts: "We further find the allegation that in the commission of the above offense, Jon Eric Tubo, caused great bodily injury upon Jeremy Meier to be true." The jury was *not* asked to make a separate finding that defendant caused bodily injury to both Mr. Meier and Mr. Berlin within the meaning of Vehicle Code section 23558.

The verdict forms for counts 1, 3 and 4 establish the jury found that defendant drove under the influence of alcohol and proximately caused death to Mr. Berlin, and great bodily injury to Mr. Meier. It logically follows the verdict forms embrace the factual findings necessary to support imposition of the one-year enhancement, specifically that defendant engaged in an unlawful act of drunk driving causing bodily injury or death to more than one victim.

The fact the verdict forms did not contain a separate reference to the one-year enhancement was a hyper-technical defect only. " ' "A verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court." [Citations.]' [Citations.] . . . '[T]echnical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice. [Citations.]' [Citation.]" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710-711.) "The same rules apply to a finding on a sentence enhancement allegation." (*People v. Chevalier* (1997) 60 Cal.App.4th 507, 514.) The court's imposition of the one-year enhancement is fully supported by the jury's factual findings that there were two victims who suffered bodily injury or death (a fact that was never disputed at trial).

**b.     The one-year enhancement need not be stayed on count 3.**

In his opening brief, defendant argues that if we find the one-year enhancements were properly imposed, then they must be stayed—an argument which respondent

14

conceded in its brief. The parties rely primarily on *Arndt*, *supra*, 76 Cal.App.4th 387 for the proposition the one-year enhancement for an act of drunk driving that results in injury to multiple victims, must be stayed in favor of the three-year enhancement for causing great bodily injury. Reliance on *Arndt* is misplaced, because it concerned a *former* version of the Vehicle Code statute that has been amended to permit imposition of both the three-year and the one-year enhancements. And, the argument also fails to address the Supreme Court's decision in *People v. Ahmed* (2011) 53 Cal.4th 156 (*Ahmed*).

At the time *Arndt* was decided in 1999, former Vehicle Code section 23182 read, in relevant part: "Any person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 23153 of this code or in violation of Section 191.5 or paragraph (3) of subdivision (c) of Section 192 of the Penal Code, shall, upon a felony conviction, receive an enhancement of one year in the state prison for each additional injured victim." (Stats. 1988, ch. 1264, § 1, pp. 4199-4200.) Former section 23182 was repealed in 1998 and reenacted, with substantially similar language, as Vehicle Code section 23558. (Stats. 1998, ch. 118, § 45, p. 770.)

*Arndt* concerned an incident of drunk driving that injured three individuals. At sentencing, the trial court imposed sentence on one substantive count of drunk driving and imposed both three-year and one-year enhancements. *Arndt* concluded that was error, and that the one-year enhancements had to be stayed, because of Penal Code section 654, subdivision (a) which provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (*Arndt*, *supra*, 76 Cal.App.4th at p. 397.) *Arndt* reasoned the one-year enhancement had to be stayed in favor of the three-year enhancement imposed for the same injuries arising from a singular act of drunk driving.

But, defendant's argument fails to take into account that the same year *Arndt* was decided, Vehicle Code section 23558 was *amended* to include an express reference to Penal Code section 1170.1, subdivision (g) which provides: "When two or more

15

enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for being armed with or using a dangerous or deadly weapon or a firearm."

The amended statute, applicable here, now provides in relevant part: "A person who proximately causes bodily injury or death to more than one victim in any one instance of driving in violation of Section 23153 of this code or in violation of Section 191.5 of, or subdivision (a) of Section 192.5 of, the Penal Code, shall, upon a felony conviction*, and notwithstanding subdivision (g) of Section 1170.1 of the Penal Code*, receive an enhancement of one year in the state prison for each additional injured victim. The enhanced sentence provided for in this section shall not be imposed unless the fact of the bodily injury to each additional victim is charged in the accusatory pleading and admitted or found to be true by the trier of fact. The maximum number of one year enhancements that may be imposed pursuant to this section is three." (Veh. Code, § 23558, amended language italicized.)

Our research has disclosed no cases discussing the new statutory language or its impact on sentencing where multiple enhancements are at issue. However, in *Ahmed*, *supra*, 53 Cal.4th 156, the Supreme Court resolved the question of how Penal Code section 654 applies to sentence enhancements. *Ahmed* instructs that "a court deciding how multiple enhancements interact should first examine the specific sentencing statutes. If, as if often the case, these statutes provide the answer, the court should apply that answer and stop there. Because specific statutes prevail over general statutes, consideration of the more general section 654 will be unnecessary. *Only if the specific statutes do not provide the answer should the court turn to section 654.* We conclude section 654 does apply in that situation, but the analysis must be adjusted to account for the differing natures of substantive crimes and enhancements." (*Ahmed*, *supra*, at pp. 159-160, italics added; accord, *People v. Sanders* (2012) 55 Cal.4th 731, 744-745 [courts

16

are to look first to specific sentencing statutes to determine if multiple punishments may be imposed].)

The specific statutes resolve the question here. Vehicle Code section 23558 was amended to include language that the one-year enhancement applies "notwithstanding subdivision (g) of Section 1170.1 of the Penal Code." In other words, even in circumstances where the three-year enhancement, or another bodily injury enhancement, is found true and may be properly imposed, Penal Code section 1170.1, subdivision (g) does not apply to prohibit the imposition of the one-year enhancement for the same injury.[3]

We are not persuaded *Arndt* applies here and the parties have not provided any other argument that would support a stay of the one-year enhancements, except for the argument to which we now turn briefly concerning count 4.

### c. Count 4 was properly stayed pursuant to Penal Code section 654.

Defendant was convicted in count 3 of drunk driving causing injury to Mr. Meier (Veh. Code, § 23153, subd. (a)) and in count 4 of driving with a blood alcohol level over 0.08 causing injury to Mr. Meier (*Id.*, subd. (b)). The court imposed and stayed a six-year determinate term on count 4 (including both enhancements), identical to that imposed on count 3. The court stayed sentence on count 4 pursuant to Penal Code section 654. Notwithstanding our discussion in part 3.b. above, the trial court correctly stayed sentence on count 4 as to the substantive offense and both enhancements pursuant to Penal Code section 654 in light of the sentence imposed on count 3. (*People v. Guilford* (1984) 151 Cal.App.3d 406, 411-412; see also *People v. Calles* (2012) 209 Cal.App.4th 1200, 1221 (*Calles*) ["When the base term of a sentence is stayed . . . , the attendant enhancements must also be stayed"].)

---

[3] We invited the parties to submit supplemental briefs addressing the current, amended version of Vehicle Code section 23558, as well as the analysis of *Ahmed*. Both parties submitted timely letter briefs acknowledging that, assuming the one-year enhancement was properly imposed as discussed in part 3.a. above, the one-year enhancement need not be stayed in light of the amended statutory language and *Ahmed*.

**d.** **The abstract of judgment contains multiple errors that must be corrected.**

At the sentencing hearing, the court imposed the one-year enhancement on both counts 3 and 4. The abstract of judgment fails to accurately reflect the court's sentence. There is no reference to the one-year enhancement on count 3 and the resulting determinate term is mistakenly calculated as a total of six years, instead of seven. "[T]he abstract of judgment is not itself the judgment of conviction, and cannot prevail over the court's oral pronouncement of judgment to the extent the two conflict." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070; accord, *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [abstract of judgment "does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize"].)

The abstract of judgment must be modified to correctly reflect the court's imposition of the one-year enhancement pursuant to Vehicle Code section 23558 on count 3 and the total determinate term of seven years (not six). The abstract contains additional errors that require modification as discussed in parts 4 and 5 below.

**4. Counts 6 and 7**

Defendant contends he can only be lawfully convicted of one count of leaving the scene of the accident because there was only one accident, and the existence of two victims does not provide a legal basis for multiple counts. He argues his conviction on count 7 must be vacated. Respondent concedes the point of law but argues we should remand to allow the trial court to exercise its discretion as to which count should be dismissed.

When a driver flees the scene of an accident, only one violation of Vehicle Code section 20001, subdivision (a) results, irrespective of the number of persons injured in the accident. (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1002; accord, *Calles*, *supra*, 209 Cal.App.4th at p. 1217 ["there can be only one conviction for leaving the scene of an accident"].) As respondent concedes, it was improper for defendant to be charged with and convicted on two counts for the same conduct.

18

At sentencing, the trial court described the two counts as "merged" and proceeded to impose sentence on count 6, along with an identical sentence on count 7 that was stayed pursuant to Penal Code section 654. We vacate defendant's conviction on count 7 and dismiss that count. (§ 1385; *Calles*, *supra*, 209 Cal.App.4th at p. 1217.) Defendant's conviction and sentence on count 6 stands.

**5.     Custody Credits**

The parties agree that defendant is entitled to 703 actual days of presentence credits and no conduct credits, but neither party accurately explains the basis for that calculation.

The record establishes defendant was arrested on October 15, 2011, and was sentenced on September 16, 2013. Because 2012 was a leap year, defendant served 703 days of actual presentence confinement. Defendant was convicted of second degree murder and is therefore not entitled to any conduct credits. (*Calles*, *supra*, 209 Cal.App.4th at p. 1226; see also Pen. Code, § 2933.2.)

The abstract of judgment erroneously provides that defendant was awarded total presentence credits of 702 days, inclusive of 105 days of conduct credits. The abstract of judgment must be modified to accurately reflect an award of total presentence credits consisting only of 703 actual days.

## DISPOSITION

The sentence is modified in the following respects: The conviction on count 3 shall include the one-year multiple victim enhancement of Vehicle Code section 23558 imposed by the court. The conviction on count 6 shall be modified to reflect its correct designation as a conviction for leaving the scene of an accident (Veh. Code, § 20001, subd. (a)), and not for driving on a suspended license. The conviction on count 7 is reversed and vacated, and the count dismissed. The total determinate term shall be modified to reflect seven years to be consistent with the court's sentencing order. The 702 days of presentence custody credits shall be deleted and replaced by an award of 703 actual custody credits and no conduct credits. The superior court shall prepare a

19

modified abstract of judgment consistent with this opinion and transmit same forthwith to the Department of Corrections and Rehabilitation.

The judgment of conviction is affirmed in all other respects as so modified.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.

FLIER, J.