Filed 6/9/15  P. v. Zarate CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039134 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. Nos. F22024, F23092) |
| v. | |
| MARINO ZARATE, | |
| Defendant and Appellant. | |

A jury convicted defendant Marino Zarate of active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)),[1] reckless evading (Veh. Code, § 2800.2, subd. (a)), misdemeanor hit and run causing property damage (Veh. Code, § 20002), misdemeanor driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), misdemeanor driving with a .08 percent or higher blood alcohol level (Veh. Code, § 23152, subd. (b)), and misdemeanor resisting, delaying, or obstructing an officer (§ 148, subd. (a)).  Defendant was on felony probation at the time of his conviction in case No. F23092, having pleaded guilty eight months earlier in case No. F22024 to reckless evading, misdemeanor participation in a criminal street gang, and misdemeanor

---

[1]     Subsequent statutory references are to the Penal Code unless otherwise noted. References to section 186.22 are to the version of the statute in effect when defendant committed his crimes.

carrying a loaded firearm in a vehicle. The trial court found defendant in violation of his probation in case No. F22024. He was sentenced to a total term of three years and eight months in prison.

On appeal, defendant challenges his conviction for active participation in a criminal street gang. He contends that (1) insufficient evidence supported the gang crime conviction; (2) the prosecution committed *Brady*[2] error; (3) evidence introduced through the prosecution's gang expert violated his Sixth Amendment right to confrontation; (4) the trial court prejudicially misinstructed the jury; (5) the trial court improperly admitted evidence that should have been excluded under Evidence Code section 352; and (6) these errors were cumulatively prejudicial. We conclude that there was insufficient evidence to support the gang crime conviction. We reverse the judgment.

## I. Background

Watsonville Police Officer Bradley Chagnon was on duty in a marked patrol car on July 16, 2012. He was en route to Watsonville Community Hospital at around 4:20 p.m. when he heard a be-on-the-lookout dispatch about a possible shooting from a vehicle in the area of Clifford Avenue and Pennsylvania Drive. The suspect vehicle was described as a red Honda. Chagnon continued driving and a few minutes later, a maroon Mitsubishi "came off of Nielson and pulled in front of me and was heading in my same direction." The Mitsubishi made a right turn toward the hospital and Chagnon followed it. At the next stop sign, the car accelerated and "just sped through . . . ." Chagnon activated his lights and the Mitsubishi turned into the hospital parking lot and pulled over. "[A] male . . . about 15 years old, just bolts out of the right front . . . passenger door, and takes off running . . . ." Chagnon saw nothing in the juvenile's hands.

---

[2] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

Chagnon got out of his patrol car and approached the Mitsubishi, but it sped away. He pursued it. As both cars looped around, they caught up to the juvenile who had bolted from the car. Chagnon saw him run across the roadway into some heavy brush and trees that separate the hospital parking lot from Airport Boulevard. The juvenile had both hands "underneath his shirt, in his front stomach area," which caused Chagnon to believe that he was hiding the gun "from the call that we had earlier, underneath that shirt." Chagnon did not see a gun. Nor did he see the silhouette of a gun or the shape of a gun through the juvenile's shirt.

Chagnon estimated that the Mitsubishi was going "at least 80" on Airport Boulevard. He chased it onto Highway 1 but lost sight of it when it exited at Main Street in Watsonville.

Watsonville Police Corporal Brian Fulgoni was on Main Street when he heard the shots-fired dispatch and Chagnon's radio transmissions. "Seconds later," Fulgoni saw a maroon Mitsubishi traveling in his direction at an extremely high rate of speed, "just weaving in and out of traffic and forcing . . . vehicles off the road." The Mitsubishi suddenly turned into the Crossroads Shopping Center. As Fulgoni entered the parking lot, he saw "a raised sidewalk" with skid marks leading into some shrubbery that was "destroyed, with tire tracks . . . visible on the lawn." He noticed the Mitsubishi ahead of him and saw a male whom he later identified as defendant run from the driver's side of the car. A second male wearing bright red shorts jumped out of the passenger side of the car and ran in a different direction. Fulgoni "immediately" recognized the second man as Ernesto Murillo. Fulgoni chased and caught him. Other officers apprehended defendant, who exhibited symptoms of alcohol intoxication.

Isaac Bohigian was at the shopping center that afternoon at a jiu jitsu studio where his son was taking a class. He heard tires screeching and turned around to see a car "pole-vault across the . . . sidewalk into the parking lot." He ran outside and approached the car to say, "Hey, slow down" when "both car doors opened up" and two men got out

3

of the car and started running.  The Mitsubishi was still moving.  Bohigian jumped into the driver's seat and stomped on the brake but was unable to stop the car before it hit a parked Mercedes.  Bohigian identified defendant of the as the driver of the Mitsubishi and Murillo as the passenger at an in-field showup that afternoon.  No weapons were found in the Mitsubishi.

Chagnon participated in a search of the wooded area near the hospital.  The juvenile who ran from the Mitsubishi was located and taken into custody.  The search did not uncover a firearm.  Fulgoni and 10 cadets did a second search for a firearm that evening but found nothing.  Officers conducted a third search the next day and found a firearm.  Police were unable to link the Mitsubishi to any shooting.  None of the three individuals in the Mitsubishi was booked in connection with a shooting from the car.

Chagnon and Fulgoni testified for the prosecution at trial.  The jury viewed videos of the chase that the officers' dashboard-mounted cameras recorded.  Bohigian described what he saw and identified defendant as the driver of the Mitsubishi.

Criminalist Scot Armstrong testified as an expert in the field of forensic alcohol analysis.  He reported that defendant's breath test results were .08 at 6:24 p.m. and .08 at 6:28 p.m. on July 16, 2009.  Armstrong opined that the results would have been "about .04 higher at the time of driving" or potentially .12 when defendant committed the offenses.

Watsonville Police Detective Edmundo Rodriguez testified as the prosecution's gang expert.  He described the history, culture, and activities of the Norteño street gang and its Watsonville subsets.  Rodriguez testified that the primary activities of the Norteño gang included the crimes listed in section 186.22, subdivision (e).  He identified two predicate offenses by Norteño gang members.  In one, a Norteño assaulted Sureños with a metal bar or a baseball bat during a gang fight between Norteños and Sureños.  In the other, a Norteño felon was found in possession of firearms, one of which was stolen.  Rodriguez opined that the Norteño gang was a criminal street gang and that defendant

4

was an active member of the gang.  He relied on defendant's tattoos, his prior contacts with law enforcement, his admission to the jail booking officer that he was a northern gang member from Watsonville, and gang items found during probation searches of his residence and his car.  Rodriguez testified that Murillo was a well-documented Norteño gang member and that the juvenile who ran from the car was also a Norteño gang member.

The defense rested without presenting any evidence.

The jury found defendant guilty on all counts.  The trial court imposed a three-year prison term for the reckless evasion count.  It imposed concurrent terms for the other counts and stayed the terms on the gang crime and DUI counts.  The court found defendant in violation of his probation in case No. F22024.  It imposed a consecutive eight-month term on the evasion count in that case and concurrent terms on the other two counts.  Defendant filed a timely notice of appeal.

## II.  Discussion

### A.  Substantive Gang Crime Conviction

Relying on *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) defendant contends that there was insufficient evidence to support his gang crime conviction.  Specifically, he argues that no substantial evidence supported the third element of the section 186.22, subdivision (a) offense.  We agree.

Our standard of review is well established.  " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.)  "[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Reilly* (1970) 3

Cal.3d 421, 425; accord *People v. Pensinger* (1991) 52 Cal.3d 1210, 1237.) "A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.'" (*People v. Morris* (1988) 46 Cal.3d 1, 21 (*Morris*), disapproved on another ground in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) A trier of fact may rely on inferences to support a conviction only if those inferences are "of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt" that the inferred facts are true. (*People v. Raley* (1992) 2 Cal.4th 870, 890-891.) "Evidence is sufficient to support a conviction only if it is substantial, that is, if it '"reasonably inspires confidence"' [citation], and is 'credible and of solid value.' [Citations.]" (*Id.* at p. 891.)

In enacting section 186.22, subdivision (a), "the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony . . . ." (*Rodriguez*, *supra*, 55 Cal.4th at p. 1138.) The gang participation statute "reflects the Legislature's carefully structured endeavor to punish active participants for commission of criminal acts done *collectively* with gang members." (*Id.* at p. 1139.) The statute "requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Id.* at p.1132.) A gang member who acts alone in committing a felony does not violate section 186.22, subdivision (a). (*Rodriguez*, at p. 1139.)

"The elements of the gang participation offense . . . are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. [Citation.]" (*Rodriguez*, *supra*, 55 Cal.4th at p. 1130.) "[T]o satisfy the third element, a defendant

6

must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct." (*Id.* at p. 1132.) He does so either "by . . . aiding and abetting other gang members in committing a felony *or* by directly committing a felony with other gang members." (*Id.* at p. 1136.)

"'To be an abettor the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission. He must share the criminal intent with which the crime was committed. The mere presence of the accused at the scene of the crime does not alone establish that the accused was an abettor. . . . In order to hold the accused as an aider and abettor the test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures.'" (*People v. Francis* (1969) 71 Cal.2d 66, 72 (*Francis*).)

Murillo did not directly commit the evasion offense here. He was not driving. The Attorney General blurs this distinction when she argues that "[a]t the beginning of the vehicle pursuit, [defendant] and Mr. Murillo stopped the car to permit an apparently armed fellow gang member to flee." The evidence established that it was defendant alone, not defendant and Murillo, who stopped the car in the hospital's parking lot. Thus, to satisfy the third element, the prosecution had to show that Murillo aided and abetted defendant's commission of the evasion crime.

A reasonable inference from the evidence is that defendant pulled over in the hospital parking lot in response to Chagnon's flashing lights. The Attorney General asserts that defendant stopped to permit the juvenile to flee. Even if defendant pulled over to permit the juvenile to flee, it does not follow that defendant had already decided to speed away from the traffic stop or that his decision to do so was aided and abetted by Murillo. There was no direct evidence that defendant and Murillo were talking in the car before defendant sped away or during the chase. Chagnon testified that when the Mitsubishi first turned in front of him, he could not tell how many occupants it had. He could not see into the car then or later during the chase.

7

Even if we infer from the fact of defendant's and Murillo's mere presence together that they were talking in the car, there is no reasonable basis to infer that Murillo directed or encouraged defendant's reckless actions. It is possible that he did so. But it is also possible that he urged defendant not to flee and/or not to drive in a way that plainly could have gotten both of them seriously injured or killed. "We may *speculate* about any number of scenarios that may have occurred . . . . A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.'" (*Morris*, *supra*, 46 Cal.3d at p. 21.) Here, there was nothing to support a reasonable inference that Murillo aided and abetted defendant's reckless evasion crime.

The Attorney General maintains that Murillo's failure to jump out of the car at the hospital "shows that he shared [defendant's] intent to evade the police" and "wanted to assist defendant in the vehicle chase." We cannot agree. The juvenile bolted from the car before the chase began. We see no reasonable basis for inferring that defendant and Murillo had a plan to evade the police or discussed the subject before defendant pulled over. We see no reasonable basis for inferring that Murillo knew when defendant pulled over that he would suddenly speed off again. One can speculate that he did. But one can also reasonably infer from defendant's intoxicated state that his decision to speed away from the traffic stop was an impulsive one that he made alone.

The Attorney General next argues that the fact that Murillo and defendant both fled after the car careened into the shopping center showed Murillo's intent to promote, further, or assist defendant's criminal conduct. Not so. Murillo's flight at the shopping center showed his intent at that moment to evade police. It did not establish that he had the same intent earlier. When defendant suddenly sped away from Chagnon at the hospital, Murillo had no choice but to remain in the speeding car that defendant controlled. Murillo's mere presence in the car is insufficient to establish that he intended to or did aid and abet defendant's commission of the crime. (*Francis*, *supra*, 71 Cal.2d at

8

p. 72.) Without substantial evidence that he did so, the third element of section 186.22, subdivision (a) was not satisfied. Defendant's conviction for active participation in a criminal street gang cannot stand.[3]

## B. Vehicle Code Section 2800.2 Conviction

Defendant contends that the trial court committed *Crawford*[4] and instructional error and that but for those two errors, his "Vehicle Code section 2800.2 crime . . . would not have been proved based on sufficient evidence." The argument lacks merit.

There was no *Crawford* error. Defendant asserts that the prosecution's gang expert's opinions were "based largely on testimonial hearsay" that the trial court improperly admitted in violation of his Sixth Amendment right to confrontation. We disagree. The admission of a "testimonial" hearsay statement by a declarant who is not available at trial violates the confrontation clause of the Sixth Amendment unless the criminal defendant had a prior opportunity to cross-examine the declarant. (*Crawford v. Washington*, *supra*, 541 U.S. 36 at p. 37 (*Crawford*).) But "the [confrontation clause] 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" (*Williams v. Illinois* (2012) __ U.S. __ [132 S.Ct. 2221, 2224] [plur. opn. of Alito, J., joined by Roberts, C.J., Kennedy & Breyer, JJ.], quoting *Crawford*, at p. 59, fn. 9.) In California, an expert may testify "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (Evid.

---

[3]     Our determination that there was insufficient evidence to support defendant's section 186.22, subdivision (a) conviction makes it unnecessary for us to address his remaining arguments directed toward obtaining reversal of that conviction.

[4]     *Crawford v. Washington* (2004) 541 U.S. 36, 37 (*Crawford*).

Code, § 801; *People v. Gardeley* (1996) 14 Cal.4th 605, 617-620 (*Gardeley*).) "The subject matter of the culture and habits of criminal street gangs . . . meets this criterion." (*Gardeley*, at p. 617.)

Here, defendant acknowledges that his confrontation clause argument is contrary *Gardeley*. We are bound by the high court's decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Under *Gardeley*, the prosecution's gang expert could properly reveal the information on which he relied in forming his expert opinions, including out-of-court statements, because those statements are not offered for their truth.[5] (*Gardeley*, at p. 619.) The first premise of defendant's insufficiency of the evidence argument fails.

There was no instructional error. Defendant claims the court erred by failing to "specifically advise the jury that this hearsay evidence was admitted solely to support the opinion of the expert, and not for its truth." He acknowledges that he did not request a limiting instruction below. The contention is forfeited. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1037.) "[T]he trial court must give a limiting instruction on evidence admitted to support the gang enhancement only on request." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051-1052.)

Here, the trial court instructed the jury on expert witness testimony with CALCRIM No. 332, which told the jury that "[y]ou must decide if information on which the expert relied is true and accurate." "You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence." The court also gave CALCRIM No. 1403, which told the jury that evidence of gang activity could be used only (1) in deciding whether the defendant acted with the intent, purpose and knowledge required to prove the gang crime charged; (2) in evaluating witness credibility; and (3) in

---

[5]  The California Supreme Court is currently considering whether a defendant's Sixth Amendment right to confrontation was violated by a gang expert's reliance on testimonial hearsay. (*People v. Sanchez*, review granted May 14, 2014, S216681.)

10

considering the facts and information relied on by the expert in reaching his opinion. The instruction specifically states that gang evidence cannot be considered "for any other purpose" and that "[y]ou may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime." We think reasonable jurors would have understood from these instructions that the information on which the expert relied was not to be unquestioningly accepted as the truth. The second premise on which defendant supports his insufficiency of the evidence argument also fails.

We reject defendant's claim that there was insufficient evidence (apart from what he claims was testimonial basis evidence) to support his Vehicle Code section 2800.2 conviction. He concedes that his only defense to that charge was that the jury could have harbored a reasonable doubt that he (as opposed to Murillo) was the driver of the car. That defense was exceedingly weak. Bohigian and Fulgoni both provided nonhearsay eyewitness testimony that defendant was the driver of the car.

### III. Disposition

The judgment is reversed. On remand, the trial court shall strike defendant's conviction for violating section 186.22, subdivision (a). The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

11

_____
Mihara, J.

WE CONCUR:


_____
Premo, Acting P. J.



_____
Elia, J.






*People v. Zarate*
H039134


12