Filed 4/14/22  P. v. Pimentel CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL PIMENTEL,<br><br>        Defendant and Appellant. | B312700<br><br>(Los Angeles County<br>Super. Ct. No. GA101592) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Smerling, Judge.  Reversed and remanded with directions.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

This case requires us to decide the retroactive reach of Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950), which became effective on January 1, 2021, and which amended Penal Code section 1203.1, subdivision (a),[1] by limiting probation terms for most felony offenses to two years.

We are presented with conflicting interpretations of Assembly Bill 1950 by defendant Daniel Pimentel, who claims he must be given the full constitutional benefit of the amendment because his case is nonfinal, and by the Attorney General, who concedes that the amendment has retroactive impact, but nevertheless contends that Pimentel's time on probation has not yet expired because it had been repeatedly tolled by section 1203.2, and was thus in a revoked status on January 1, 2021, when the new statute went into effect.

In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), as well as its progeny, our high court has made clear that ameliorative penal statutes, such as Assembly Bill 1950, must be construed to apply to their full constitutionally permissible limit. The breadth of the *Estrada* holding prevails over the Attorney General's arguments premised upon rules of statutory construction. Therefore, it is of no moment that Assembly Bill 1950 is silent with respect to the extent of its retroactive application. Nor does it matter that the Legislature left in place section 1203.2's tolling provisions when enacting the new amendment. Further, Pimentel's probation violations were both "minor" and "technical"

---

[1] Subsequent undesignated statutory citations are to the Penal Code.

placing him squarely within the concerns expressed by Assembly Bill 1950's legislative history.

Under Assembly Bill 1950, Pimentel's probation expired by operation of law in October 2019, i.e., two years after he was placed on probation (including the tolling that occurred during that time). Therefore, the trial court lacked jurisdiction to rule upon the March 2020 probation violation.

Accordingly, we reverse the trial court's order and remand with directions to correct the abstract of judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On August 3, 2017, the People filed a felony complaint charging Pimentel with vandalism over $400 damage (§ 594, subd. (a); count 1), and assault with a deadly weapon (§ 245, subd. (a)(1); count 2).[2]

On October 11, 2017, Pimentel pleaded no contest to the vandalism charge and was placed on formal probation for three years. The assault with a deadly weapon charge was dismissed as part of the plea negotiation.

On May 15, 2019, the trial court revoked probation because Pimentel failed to comply with a condition of probation regarding mental health treatment.

On May 23, 2019, Pimentel admitted his probation violation, and the trial court reinstated probation.

On August 28, 2019, after Pimentel admitted a second probation violation, the court again revoked his probation and ordered it immediately reinstated.

---

[2] The issues presented in this appeal require only a brief factual summary.

3

On March 10, 2020, the trial court again revoked Pimentel's probation a third time because he failed to appear for a status hearing.

On April 19, 2021, Pimentel surrendered on the warrant and appeared in court.

At a May 17, 2021 hearing, Pimentel admitted a third probation violation. The trial court revoked probation and granted Pimentel a new two-year term of probation, to expire on May 16, 2023.

Pimentel timely appealed.

## DISCUSSION

### A. Assembly Bill 1950 Concededly Applies Retroactively to All Nonfinal Judgments

Effective January 1, 2021, Assembly Bill 1950 amended section 1203.1, subdivision (a), to limit the maximum probation term for felony offenses to two years, except in circumstances that are not present here. (Stats. 2020, ch. 328, § 2; *People v. Lord* (2021) 64 Cal.App.5th 241, 244-245.)

"Generally, a statute applies prospectively unless otherwise stated in the language of the statute, or when retroactive application is clearly indicated by legislative intent." (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.) Beginning with its opinion in *Estrada, supra*, 63 Cal.2d 740, however, our Supreme Court has recognized an exception to this rule in ameliorative criminal statutes.

The court in *Estrada* explained that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment

4

for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it *constitutionally could apply*.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.  This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra*, 63 Cal.2d at p. 745, italics added.)

The *Estrada* presumption of retroactivity means that, in the absence of a savings clause providing only prospective relief, or other clear intention concerning any retroactive effect, " 'a legislative body ordinarily intends for ameliorative changes to the criminal law *to extend as broadly as possible*, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citation.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 881-882, italics added.)

In *People v. Francis* (1969) 71 Cal.2d 66, the court held that the *Estrada* presumption of retroactivity applies where a new law merely allows for a possibility of reduced punishment by giving the trial court discretion to impose a lesser sentence.  (*Francis, supra*, at p. 76.)  And this presumption has been held applicable to a wide range of ameliorative criminal laws over a period of many years.  (See *People v. Esquivel* (2021) 11 Cal.5th 671, 675-676 [listing cases].)

In keeping with *Estrada*, multiple appellate courts, including this court most recently in *People v. Canedos* (Apr. 13,

2022, B308433) \_\_\_ Cal.App.5th \_\_\_, have specifically held that Assembly Bill 1950 applies retroactively because it is an ameliorative statute that reduces a criminal defendant's potential punishment. (See, e.g., *People v. Lord*, *supra*, 64 Cal.App.5th at pp. 244-246; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1070-1074, review granted June 30, 2021, S268787; *People v. Sims* (2021) 59 Cal.App.5th 943, 955-964; *People v. Quinn* (2021) 59 Cal.App.5th 874, 879-884; *People v. Burton* (2020) 58 Cal.App.5th Supp. 1.)

## B. The Probation Tolling Statute Does Not Prevail Over the Constitutional Mandate of Full Retroactivity

While conceding that Assembly Bill 1950 is retroactive and that it applies to Pimentel's nonfinal probation violation, the Attorney General nevertheless argues we should affirm the trial court's revocation of Pimentel's probation because, when the new Legislation was passed, his probation was in a revoked status as a result of section 1203.2, subdivision (a), the probation tolling statute.

Tolling of the period of probation supervision can occur if there is "probable cause to believe that the supervised person is violating any term or condition of the person's supervision," in which case they may be rearrested and "the court may revoke and terminate the supervision of the person if the interests of justice so require." (§ 1203.2, subd. (a).) Revocation under this provision, "summary or otherwise, shall serve to toll the running of the period of supervision." (*Ibid*.)

The Attorney General asserts that the combination of statutory "silence" on the question of Assembly Bill 1950's retroactive application, combined with the Legislature's failure to amend the tolling statute—section 1203.2—imply the trial court's

6

order revoking Pimentel's probation was lawfully made because Pimentel's probation was in a revoked status on January 1, 2021, the date when Assembly Bill 1950 went into effect:  "Nothing in [Assembly Bill] 1950 suggests that it was intended to abrogate a trial court's jurisdiction to sentence a defendant on sustained probation violations that took place prior to [Assembly Bill] 1950's effective date."

The Attorney General's argument is flawed for several reasons.  As we have said, a law's silence on the issue of retroactivity is insufficient to overcome the *Estrada* presumption.  "Our cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'  [Citations.]"  (*People v. Conley* (2016) 63 Cal.4th 646, 656-657.)  Thus, in *Conley*, the court held that Proposition 36, which limited the application of the "Three Strikes" law, was not fully retroactive because the electorate created a specific mechanism for convicted defendants to seek resentencing. (*Conley*, *supra*, at pp. 657-659.)

The court in *Conley* explained that "[w]here, as here, the enacting body creates a special mechanism for application of the new lesser punishment to persons who have previously been sentenced, and where the body expressly makes retroactive application of the lesser punishment contingent on a court's evaluation of the defendant's dangerousness, we can no longer say with confidence, as we did in *Estrada,* that the enacting body lacked any discernible reason to limit application of the law with respect to cases pending on direct review."  (*People v. Conley*,

7

*supra*, 63 Cal.4th at pp. 658-659.)  Because Assembly Bill 1950 contains no equivalent special provision, there is no basis for us to infer a limitation on the retroactive effect of this law.

Nor is there a savings clause in Assembly Bill 1950 "or other indication it should be applied prospectively only." (*People v. Lord*, *supra*, 64 Cal.App.5th at p. 245.)  "On the contrary, the legislative history for Assembly Bill No. 1950 suggests the Legislature harbored strong concerns that probationers— including probationers whose cases are pending on appeal—face unwarranted risks of incarceration due to the lengths of their probation terms." (*People v. Sims*, *supra*, 59 Cal.App.5th at p. 961.)

Committee reports on the bill note that about 20 percent of California prison admissions " ' "are the result of supervised probation violations," ' " and a " ' " 'shorter term of probation, allowing for an increased emphasis on services, should lead to improved outcomes for both people on misdemeanor and felony probation while reducing the number of people on probation returning to incarceration.' " ' " (*People v. Sims*, *supra*, 59 Cal.App.5th at p. 962.)

Even more explicitly, the author of Assembly Bill 1950 indicates that this legislation was passed, in part, to remove from the probation population those who were present due to sustained, "technical" or "minor" infractions.  Comment No. 1 of the "Author's Statement" reads:

" 'California's adult supervised probation population is around 548,000—the largest of any state in the nation, more than twice the size of the state's prison population, almost four times larger than its jail population and about six times larger than its parole population.  [¶]  A 2018 Justice Center of the Council of

8

State Governments study found that a large portion of people violate probation and end up incarcerated as a result. The study revealed that 20 percent of prison admissions in California are the result of supervised probation violations, accounting for the estimated $2 billion spent annually by the state to incarcerate people for supervision violations. Eight percent of people incarcerated in a California prison are behind bars for supervised probation violations. *Most violations are "technical" and minor in nature*, such as missing a drug rehab appointment or socializing with a friend who has a criminal record.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019-2020 Reg. Sess.) as amended May 6, 2020, p. 3, italics added.)

As a consequence, "the legislative history demonstrates that the amendment was motivated by concerns that apply to current probationers as much as future ones" and addresses probation being " ' "a pipeline for re-entry into the carceral system." ' " (*People v. Stewart*, *supra*, 62 Cal.App.5th at p. 1073.)

The nature and extent of Pimentel's thrice revoked and extended probation history places him squarely within the concerns expressed in the legislative history. In October 2017, Pimentel was placed on formal probation for three years. Thereafter, probation was revoked on two occasions for failure to comply with mental health treatment, which resulted in tolling the period of supervision for nine days total.

On January 1, 2021, Assembly Bill 1950 shortened Pimentel's period of probation by operation of law with an end date of October 2019.

Alleged violations of probation that occurred after October 2019 were therefore of no force and effect. So, while it is true that Pimentel's probation had been "revoked" in March 2020 for

9

failure to appear, that he did not surrender on the warrant until April 2021, and that he "admitted" another probation violation in May 2021, none of these events had legal effect.

All three of Pimentel's probation violations were " 'technical' and minor in nature" with their effect being to extend Pimentel's presence in the state's probation population by over three additional years.  Indeed, were we to adopt the Attorney General's argument, Pimentel's probation would not expire until May 16, 2023, effectively turning his period of probation from three years into over five and one-half years.

Distilled to its essence, the Attorney General's argument is just another *statutory interpretation* argument proceeding from a law's silence—in this case, its failure to amend another statute—but such an argument ignores the legislative history and is subordinate to our high court's explicit guidance that we must give ameliorative criminal statutes their full *constitutional* reach when deciding questions of retroactive application.  (See *Estrada*, *supra*, 63 Cal.2d at p. 745.)

**DISPOSITION**

The trial court's order is reversed, and the trial court is directed to amend the abstract of judgment to reflect that Pimentel's probation ended on October 19, 2019.  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation the amended abstract of judgment.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11